# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CLAY COCKERELL and** | § | |
| **COCKERELL DERMATOPATHOLOGY,** | § | |
| **P.A.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **Cause No. _____** |
| | § | |
| **CBS NEWS INC; JIM AXELROD; and** | § | |
| **EMILY RAND,** | § | |
| | § | |
| **Defendants.** | § | |

**INDEX OF DOCUMENTS FILED IN STATE COURT PROCEEDINGS**

| Document | | Date filed in State Court |
|---|---|---|
| Exhibit A-1 | Docket | As of July 10, 2017 |
| Exhibit A-2 | Plaintiffs' Original Petition | June 7, 2017 |
| Exhibit A-3 | Citations issued to CBS News Inc; Jim Axelrod; and Emily Rand | June 07, 2017 |
| Exhibit A-4 | Return of Service of Citation to CBS News Inc. | June 21, 2017 |
| Exhibit A-5 | Defendants' Answer, Special Exception, Verified Pleas, and Affirmative Defenses to Plaintiffs' Original Petition | July 7, 2017 |

# EXHIBIT A-1

## Case Information

DC-17-06799 | COCKERELL DERMATOPATHOLOGY PA et al vs. JAMES AXELROD et al

| Case Number | Court | File Date |
|---|---|---|
| DC-17-06799 | 193rd District Court | 06/07/2017 |
| Case Type | Case Status | |
| DEFAMATION | OPEN | |

## Party

PLAINTIFF
COCKERELL DERMATOPATHOLOGY PA

Address
c/o Jeffrey M. Tillotson
750 N. St. Paul Street, Suite 610
Dallas TX 75201

Active Attorneys ▾

Lead Attorney
TILLOTSON, JEFFREY M
Retained

Work Phone
214-382-3040

Fax Phone
214-501-0731

PLAINTIFF
COCKERELL, CLAY

Address
c/o Jeffrey M. Tillotson
750 N. St. Paul Street, Suite 610
Dallas TX 75201

Active Attorneys ▾

Lead Attorney
TILLOTSON, JEFFREY M
Retained

Work Phone
214-382-3040

Fax Phone

214-501-0731

---

**DEFENDANT**

AXELROD, JAMES

Address
51 WEST 52ND STREET
NEW YORK NY 10019

Active Attorneys ▾
Lead Attorney
PRATHER, LAURA LEE
Retained

Work Phone
512-867-8400

Fax Phone
512-867-8470

---

**DEFENDANT**

CBS NEWS INC

Address
BY SERVING REGISTERED AGENT CORPORATION SERVICE COMPANY
D/B/A LAWYERS INCORPORATING SERVICE COMPANY
211 E 7TH STREET SUITE 620
AUSTIN TX 78701-3218

Active Attorneys ▾
Lead Attorney
PRATHER, LAURA LEE
Retained

Work Phone
512-867-8400

Fax Phone
512-867-8470

---

**DEFENDANT**

RAND, EMILY

Address
51 WEST 52ND STREET
NEW YORK NY 10019

Active Attorneys ▾
Lead Attorney
PRATHER, LAURA LEE
Retained

Work Phone
512-867-8400

Fax Phone
512-867-8470

## Events and Hearings

06/07/2017 NEW CASE FILED (OCA) - CIVIL

06/07/2017 ORIGINAL PETITION ▾

Final CBS Original Petition.pdf

06/07/2017 ISSUE CITATION

06/09/2017 CITATION ISSUED ▾

DC17-06799 CBS.pdf

DC17-06799 EMILY R.pdf

DC17-06799 JAMES A.pdf

06/09/2017 CITATION▾

Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF COUNTY

Returned
06/21/2017
Anticipated Server
ESERVE

Anticipated Method
Comment
ESERVE 3CITS 17538255/TJ.

06/21/2017 RETURN OF SERVICE ▾

CBS

Comment
CIT EXEC 6/15/17 TO CBS NEWS INC

07/07/2017 ORIGINAL ANSWER - GENERAL DENIAL ▾

Ds' Ans SpEx VP & Aff Def.pdf

Comment
& SPECIAL EXCEPTIONS (SUBMITTED)

## Financial

COCKERELL DERMATOPATHOLOGY PA

| | | | | |
|---|---|---|---|---|
| | Total Financial Assessment | | | $344.00 |
| | Total Payments and Credits | | | $344.00 |
| 6/8/2017 | Transaction Assessment | | | $344.00 |
| 6/8/2017 | CREDIT CARD - TEXFILE (DC) | Receipt # 36067-2017-DCLK | COCKERELL DERMATOPATHOLOGY PA | ($344.00) |

## Documents

Final CBS Original Petition.pdf

DC17-06799 CBS.pdf

DC17-06799 EMILY R.pdf

DC17-06799 JAMES A.pdf

CBS

Ds' Ans SpEx VP & Aff Def.pdf

# EXHIBIT A-2



RECEIVED

JUN 1 4 2017
@ 5:30 PM

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To: CBS NEWS INC**
   **BY SERVING ITS REGISTERD AGENT CORPORATION SERVICE COMPANY**
   **DBA LAWYERS INCORPORATING SERVICE COMPANY**
   **211 E 7TH ST STE 620**
   **AUSTIN TX 78701-3218**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and **ORIGINAL** petition, a default
judgment may be taken against you.  Your answer should be addressed to the clerk of the **193rd District
Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being  **CLAY COCKERELL; COCKERELL DERMATOPATHOLOGY PA**

Filed in said Court  **7th day of June, 2017** against

**CBS NEWS INC; JIM AXELROD; EMILY RAND**

For Suit, said suit being numbered **DC-17-06799,** the nature of which demand is as follows:
Suit on **DEFAMATION** etc. as shown on said petition, a copy of which accompanies this citation.  If this
citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 9th day of June, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

/s/ Teresa Jones
By_____, Deputy
   TERESA JONES

DELIVERED:
ON: _6/12/17_
BY:_____SCH_3012_
@: _9:03_ am/pm

---

**ESERVE**

**CITATION**

**DC-17-06799**

**COCKERELL DERMATOPATHOLOGY
PA et al
vs.
JAMES AXELROD et al**

ISSUED THIS
**9th day of June, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  TERESA JONES, Deputy

**Attorney for Plaintiff**
JEFFREY M TILLOTSON
TILLOTSON LAW
750 N ST PAUL ST
SUITE 610
DALLAS TX  75201
214-382-3040

# DALLAS COUNTY
# SERVICE FEES
# NOT PAID

# OFFICER'S RETURN

Case No. : DC-17-06799

Court No.193rd District Court

Style: COCKERELL DERMATOPATHOLOGY PA et al

vs.

JAMES AXELROD et al

Came to hand on the _____ _____day of _____, 20_____, at _____ o'clock_____.M. Executed at _____,

within the County of _____ _____ at _____ o'clock _____.M. on the _____day of_____ _____,

20_____, by delivering to the within named

_____ _____

_____ _____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:  To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____County, _____ |
| For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____ _____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

FILED
DALLAS COUNTY
6/7/2017 5:39:34 PM
FELICIA PITRE
DISTRICT CLERK

Tonya Pointer

CAUSE NO. ___DC-17-06799___

| | | |
|---|---|---|
| CLAY COCKERELL and | § | IN THE DISTRICT COURT OF |
| COCKERELL DERMATOPATHOLOGY, | § | |
| P.A., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| CBS NEWS INC; JIM AXELROD; and | § | |
| EMILY RAND, | § | |
| | § | |
| **Defendants.** | § | **_193RD JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Dr. Clay Cockerell and Cockerell Dermatopathology, P.A. ("CDP," collectively with Dr. Cockerell, "Plaintiffs") file this Original Petition against Defendants CBS News, Inc. ("CBS"), Jim Axelrod, and Emily Rand (collectively, "Defendants") and would respectfully show the Court the following:

### INTRODUCTION

This lawsuit is an indictment of modern media's "report first and ask questions later" attitude. In the rush to get something—anything—published first (ideally with a salacious headline), CBS and its reporters trampled on the truth. Left in the rubble of their false story was Dr. Clay Cockerell and his medical practice, CDP. Dr. Cockerell is one of the Nation's most respected dermatologists. His impeccable reputation was forever tarnished when CBS and reporters Jim Axelrod and Emily Rand rushed to report a woefully under-investigated news story that implied Dr. Cockerell was a common criminal involved in a horrible scam to defraud members of the U.S. military and the Federal Government.

CBS's story as it related to Dr. Cockerell and CDP *was absolutely false.* Defendants knew or should have known they were falsely painting Dr. Cockerell as a criminal. But for them, being first is more important than being right.

Accordingly, Plaintiffs bring this action against Defendants for defamation and business disparagement based on a false and misleading news story published by CBS. Defendants Axelrod and Rand were the reporters for the story. In Defendants' rush to publish the story and use the allure of members of the U.S. military being duped, CBS falsely implied that Plaintiffs were part of a criminal scheme. The truth is, they were not and never have been. Had CBS and its reporters bothered to conduct reasonable diligence prior to publishing their story, they would have known that their story was false about Plaintiffs.

As a result, the news story was intentionally and/or recklessly misleading. Worse, the story has been devastating to Plaintiffs. Dr. Cockerell's sterling reputation as a doctor of impeccable integrity has been forever tarnished. Meanwhile, CDP's business reputation has been injured and it has suffered lost business and reputational harm.

Defendants' story has caused Plaintiffs millions of dollars in damages. This lawsuit seeks to hold them accountable for that inexcusable misconduct.

## DISCOVERY CONTROL PLAN

1.      Plaintiffs request a Level 3 discovery control plan.

## CLAIM FOR RELIEF

2.      Plaintiffs seek monetary relief in excess of $100,000,000.

## PARTIES

3.      Dr. Clay Cockerell lives in Dallas, Texas, and is an internationally recognized dermatologist and dermatopathologist.

4.     Cockerell Dermatopathology, P.A. is Dr. Cockerell's medical practice, and is also located in Dallas, Texas.  It is a highly respected labatory that is nationally and internationally known for its diagnostic excellence and unparalleled service in the evaluation of dermatologic disorders ranging from the routine to the most difficult cases.

5.     Defendant CBS News is a national news organization and television broadcaster. CBS is located at 51 West 52nd Street, New York City, New York 10019, and may be served with process of service through its registered agent of service, Corporation Service Company, db/a Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.     Defendant James (Jim) Axelrod is a reporter for CBS News and lives in New York City, New York and may be served with process of service at 51 West 52nd Street, New York City, New York 10019.

7.     Defendant Emily Rand is a reporter for CBS News and lives in Boston, Massachussets and may be served with process of service at 51 West 52nd Street, New York City, New York 10019.

## JURISDICTION & VENUE

8.     This Court has jurisdiction over this dispute, the amount in question being in excess of the jurisdictional minimum of this Court.

9.     This Court has personal jurisdiction over the Defendants because they each engaged in minimum contacts with the State of Texas and exercising jurisdiction over them would not offend traditional notions of fair play and substantial justice.

10.     This Court may exercise general personal jurisdiction because these Defendants are engaged in ongoing, systematic, and continuous business in the State of Texas.  This Court

may also exercise specific personal jurisdiction over Defendants because all or a substantial part of their acts or omissions giving rise or related to this suit occurred in Dallas County, Texas.

11.     Venue is appropriate in Dallas County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County.

12.     All conditions precedent to Plaintiffs' claims for relief have been performed or occurred.

## FACTS

13.     Dr. Cockerell is the former president of the American Academy of Dermatology and internationally recognized dermatologist and dermatopathologist, and is universally considered both a pioneer and a leader in his field. He is highly respected in his profession and extremely accomplished. He is a former president of the American Academy of Dermatology and is the recipient of numerous honors and awards. Until Defendants ran their stories, Dr. Cockerell had a pristine record and had never been accused of improper billing conduct.

14.     Dr. Cockerell joined CDP's predecessor in 1988 before ultimately taking over and renaming the practice to its current name. CDP offers diagnostic excellence and unparalleled service in the evaluation of dermatologic disorders ranging from the routine to the most difficult cases. Its core business is dermatopathology, which refers to evaluation of skin biopsy specimens.

15.     Until Defendants ran their false story, Dr. Cockerell and CDP had an impeccable reputation for integrity and honesty. Dr. Cockerell had been accorded many honors during his professional career, and had the respect of his peers and the professional community. Indeed, as

a testament to Dr. Cockerell's and CDP's excellence and reputation, CDP serves more than 1,300 doctors from across Dallas-Fort Worth, Texas, the United States and abroad.

*Defendants' Initial False News Story.*

16.    On June 8, 2016, CBS News ran a story in which it claimed "CBS News is exposing an insurance scam -- and you, as a taxpayer, are a victim." The story was entitled "**US military members duped to help pull off insurance fraud.**" It was published online and shown on television.

17.    The reporters for the CBS story were Jim Axelrod and Emily Rand.

18.    The initial focus of the story was on some individuals who were duping veterans into giving specimens for what they claimed was clinical research. As part of its story, Defendants interviewed an individual named Dustin Warren, who explained how the marketing "scam" supposedly worked. Had Defendants concentrated their story on that conduct, this lawsuit would not have been filed.

19.    However, Defendants obviously wanted to make the news story even more salacious.

20.    Without proper investigation or diligence, CBS and the other Defendants went on to portray inaccurately that "[t]he tests are conducted and billed by a lab in Dallas, Cockerell Dermatopathology," implying that CDP did the actual testing and ran the lab. As set out below, this was not true. Had CBS and the Defendants performed a reasonable vetting of their story, they would have learned that their statements were patently untrue. Defendants were, therefore, reckless with regard to the truth about Plaintiffs in the CBS story.

21.    Defendants' story then portrayed the fraudulent conduct as something being done by CDP and Dr. Cockerell. The story further implied that CDP was setting up "a storefront"

near Fort Hood in order to dupe other members of the U.S. military. Defendants knew or should have known that these statements were false and created a false impression.

22.     In order to pitch the story as "uncovering fraud on US military personnel," CBS and its reporters rushed to make these untrue statements.

23.     The overall impression of CBS' story was false because it falsely implied that Dr. Cockerell and CDP were involved in some sort of criminal activity. *This was entirely, completely, and totally untrue.*

24.     Defendants failed to conduct proper due diligence before going forward with their news story. They failed to interview all the relevant players (including, most egregiously, either Dr. Cockerell or any other member of CDP); failed to learn all the key and necessary facts; and overall failed to do their jobs as reporters and a responsible news organization. Had they done so, the story would not have falsely implied that Plaintiffs were engaged in criminal conduct.

25.     Unfortunately, as is all too common in today's media culture (and as Defendants knew and even, upon information and belief, intended would happen), CBS' story was republished and cited by other news sources. This caused extreme damage to Plaintiffs.

*The True Facts that CBS Did Not Report.*

26.     Defendants' initial story was false several ways. First and foremost, Dr. Cockerell was not aware of any of the improper conduct portrayed in the CBS story. He did not direct or supervise the individuals allegedly involved in the scheme. He did not hire them, speak to them, or receive reports from them. In fact, he did not even *know* them, and thus was unaware of any of their actions. Dr. Cockerell did not condone or encourage their conduct.

27.     The individuals who allegedly engaged in improper conduct as outlined in the CBS story were affiliated with a company called ProGen, which is the laboratory business that performed the diagnostic testing.

28.     Far from being part of some criminal activity, Dr. Cockerell was outraged when he learned of the improper conduct described in CBS' news story.  However, like the servicemen and -women and the government, he, too, was duped because he was not aware of the wrongful actions.

29.     Defendants did not report any of the above.  Instead, they created an entirely misleading impression that Dr. Cockerell was orchestrating the fraud through and with CDP.

30.     The story did not even mention ProGen, much less its role.

31.     Defendants' story simply blended the fraudulent conduct (misleading veterans into giving samples by telling them it was for clinical research and then passing off those samples as legitimate for purposes of testing and billing) with actual legitimate laboratory testing.  The former has nothing to do with Dr. Cockerell or CDP, as he was not aware of—much less involved with—any improper conduct.  Defendants, however, merged the two and unfairly and inaccurately portrayed Dr. Cockerell as part of the marketing scam.  It would be as if CBS ran a story blaming VISA for the wrongful behavior of an internet scamster simply because it processed the credit card transaction in good faith.

32.     Dr. Cockerell was outraged when he learned of the alleged fraudsters' improper conduct.  He immediately disavowed it and has undertaken steps to ensure that the wrongdoers are suitably held accountable for their actions.  Of course, Defendants did not report this in their story.  Instead, they sought to portray Dr. Cockerell as being untruthful or dishonest in his effort to disavow the wrongful conduct.

33.     Moreover, the CBS News story did not properly report the true relationship (or lack thereof) between Dr. Cockerell and the individuals actually involved in the wrongdoing. Instead, the story selectively reported general but misleading statements such as "it is his lab," so as to imply that Dr. Cockerell was involved with the wrongful conduct. Again, he was not.

34.     Defendants never reported on his denials nor did they explain to their millions of readers and viewers that Dr. Cockerell and CDP were not (and have not been) accused of any wrongdoing and have no connection to those who were undertaking improper actions. Similarly, Defendants did not report on Dr. Cockerell's vehement efforts to assist holding the fraudsters accountable for their actions.

35.     CBS ran what it billed as a "follow-up" story the next day on June 9, 2016. While the overall focus of the follow-up story was on the subject matter of the U.S. military being scammed in general, Dr. Cockerell and CDP were again mentioned. The overall impression given by the follow up story was the same as the original story: that Dr. Cockerell and CDP were engaged in a fraudulent insurance scam.

### CBS's False News Stories Caused Plaintiffs Enormous Damages.

36.     Defendants' stories have been devastating to Dr. Cockerell and his business. His reputation is forever tainted by the stories, which are still available on the CBS website at http://www.cbsnews.com/news/us-military-members-duped-to-help-pull-off-insurance-fraud/ (June 8, 2016 initial story) and http://www.cbsnews.com/news/feds-investigating-insurance-fraud-that-duped-us-military-members/ (June 9, 2016 follow-up story). Worse, others in the professional community have treated him differently and in some cases shunned him, believing, based on Defendants' stories, that he was involved in criminal conduct.

37.     CDP has suffered as well. Trusted and loyal customers are now wary of doing further business with CDP, wrongly believing that it was engaged in some sort of fraud. Competitors are also using the false news stories to further harm CDP's reputation.

38.     CDP has lost significant business as a result.

39.     Further, Plaintiffs have had to spend enormous sums in attorney's fees and other costs to address the various fallout from Defendants' false new story.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *(LIBEL)*

40.     Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

41.     As described above, Defendants published and/or republished statements to the public about Dr. Cockerell and CDP that were false, misleading, and defamatory, in that those statements indicated and presented the false impression (including by omitting material facts and falsely juxtaposing others) that Plaintiffs were involved in a criminal scheme to defraud the Federal Government and/or members of the U.S. military.

42.     Defendants made those statements with knowledge of their falsity or with reckless disregard for their truth, or at least with negligence because Defendants should have known the statements were false.

43.     Such statements are so obviously harmful that they constitute defamation *per se*.

44.     Indeed, Defendants' false, misleading, and defamatory statements caused extensive damages to Plaintiffs by injuring their personal and business reputations and deterring others from associating or dealing with Plaintiffs, costing them many millions of dollars. In

addition, Plaintiffs were forced to incur significant sums in attorney's fees to address the various issues caused by Defendants' false statements.

45.     Plaintiffs seek to recover actual and exemplary damages from Defendants.

## SECOND CAUSE OF ACTION
### *(BUSINESS DISPARAGEMENT)*

46.     Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

47.     Defendants published false and disparaging statements about CDP in their new stories, as described above.

48.     As set forth above, Defendants made their false statements without conducting any remotely adequate due diligence or investigation, and as such, made those statements knowing of their falsity or with reckless disregard for the truth.

49.     Defendants' false statements were not privileged.

50.     Defendants' news stories have damaged CDP in its business dealings, including by causing existing and prospective patients and doctors to use different practices, rather than CDP.

51.     As a direct result, CDP has suffered significant economic damages that exceed $1 million, including the loss of both existing and prospective patients.

52.     CDP seeks to recover actual damages and exemplary damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER

For the reasons set forth above, Plaintiffs hereby request that this Court award the

following relief:

      a.    Actual damages, including direct and consequential damages;

      b.    Exemplary damages;

      c.    Prejudgment and post-judgment interest;

      d.    Reasonable and necessary attorneys' fees incurred through the trial of this cause and through any appeal, including reasonable and necessary attorneys' and expert witness fees and expenses actually incurred by Plaintiffs as a result of prosecuting these claims against Defendants;

      e.    Costs of court; and

      f.    All other relief at law or in equity to which Plaintiffs are justly entitled.

DATED: June 7, 2017

                                Respectfully submitted,

                                */s/ Jeffrey M. Tillotson*
                                Jeffrey M. Tillotson
                                State Bar No. 20039200
                                jtillotson@tillotsonlaw.com
                                Jonathan R. Patton
                                State Bar No. 24088198
                                jpatton@tillotsonlaw.com
                                Joseph A. Irrobali
                                State Bar No. 24092564
                                airrobali@tillotsonlaw.com
                                **TILLOTSON LAW**
                                750 North St. Paul Street, Suite 610
                                Dallas, Texas 75201
                                (214) 382-3041 Telephone
                                (214) 501-0731 Facsimile

                                **ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT A-3

# FORM NO. 353-3 - CITATION
## THE STATE OF TEXAS

**To:**  **CBS NEWS INC**
BY SERVING ITS REGISTERD AGENT CORPORATION SERVICE COMPANY
DBA LAWYERS INCORPORATING SERVICE COMPANY
211 E 7TH ST STE 620
AUSTIN TX 78701-3218

**GREETINGS:**
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and **ORIGINAL** petition, a default judgment may be taken against you.  Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being  **CLAY COCKERELL; COCKERELL DERMATOPATHOLOGY PA**

Filed in said Court **7th day of June, 2017** against

**CBS NEWS INC; JIM AXELROD; EMILY RAND**

For Suit, said suit being numbered **DC-17-06799**, the nature of which demand is as follows:
Suit on **DEFAMATION** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 9th day of June, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By _____, Deputy
       /s/ Teresa Jones
       TERESA JONES



**ESERVE**

**CITATION**

**DC-17-06799**

COCKERELL DERMATOPATHOLOGY
PA et al
vs.
**JAMES AXELROD et al**

ISSUED THIS
**9th day of June, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  TERESA JONES, Deputy

**Attorney for Plaintiff**
JEFFREY M TILLOTSON
TILLOTSON LAW
750 N ST PAUL ST
SUITE 610
DALLAS TX 75201
214-382-3040

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

# OFFICER'S RETURN

Case No. : DC-17-06799

Court No.193rd District Court

Style: COCKERELL DERMATOPATHOLOGY PA et al

vs.

JAMES AXELROD et al

Came to hand on the _____ day of _____, 20_____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____.M. on the _____ day of _____,

20_____, by delivering to the within named

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

For serving Citation    $ _____

For mileage             $ _____          of _____ County, _____

For Notary              $ _____          By _____ Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County

# EXHIBIT A-4



FILED
DALLAS COUNTY
6/21/2017 12:35 PM
FELICIA PITRE
DISTRICT CLERK

Dianne Coffey

RECEIVED

JUN 1 4 2017
@ 5:30 PM

## FORM NO. 353-3 - CITATION

## THE STATE OF TEXAS

To: CBS NEWS INC
BY SERVING ITS REGISTERD AGENT CORPORATION SERVICE COMPANY
DBA LAWYERS INCORPORATING SERVICE COMPANY
211 E 7TH ST STE 620
AUSTIN TX 78701-3218

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the 193rd District Court at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being CLAY COCKERELL; COCKERELL DERMATOPATHOLOGY PA

Filed in said Court 7th day of June, 2017 against

CBS NEWS INC; JIM AXELROD; EMILY RAND

For Suit, said suit being numbered DC-17-06799, the nature of which demand is as follows:
Suit on DEFAMATION etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 9th day of June, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By _____ , Deputy
/s/ Teresa Jones
TERESA JONES

---

ESERVE

CITATION

DC-17-06799

COCKERELL DERMATOPATHOLOGY
PA et al
vs.
JAMES AXELROD et al

ISSUED THIS
9th day of June, 2017

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: TERESA JONES, Deputy

Attorney for Plaintiff
JEFFREY M TILLOTSON
TILLOTSON LAW
750 N ST PAUL ST
SUITE 610
DALLAS TX 75201
214-382-3040

DALLAS COUNTY
SERVICE FEES
NOT PAID

# OFFICER'S RETURN

Case No. : DC-17-06799

Court No.193rd District Court

Style: COCKERELL DERMATOPATHOLOGY PA et al

vs.

JAMES AXELROD et al

Came to hand on the ___*14th*___ day of ___*June*___, 20 *17*, at *5:30* o'clock *P* .M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____ day of _____,

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |
|---|---|---|
| For serving Citation | $ RETURN / AFFIDAVIT | |
| For mileage | $ PROOF - ATTACHED _____County, _____ |
| For Notary | $_____ By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

**RETURN OF SERVICE**

## Cause No. DC-17-06799

In the 193rd Judicial District Court of
Dallas County, Texas

CLAY COCKERELL, et al
      Plaintiff

V.

CBS NEWS INC., et al
      Defendant

Came to hand on June 14, 2017, at 05:30 PM.

Executed at 211 E. 7th Street, Suite 620, Austin, TX 78701, within the County of Travis at 9:05 AM on June 15, 2017, by delivering to the within named:

### CBS NEWS INC.,

**by delivering to its Registered Agent, CORPORATION SERVICE COMPANY d/b/a CSC-LAWYERS INCORPORATING SERVICE COMPANY, by and through its designated agent, SUE VERTREES, a true copy of this Citation together with Plaintiffs' Original Petition, having first endorsed upon such copy of such process the date of delivery.**

I certify that I am approved by the Supreme Court of Texas, Misc. Docket No. 05-9122 under rule 103 and 536(a) of the TRCP to deliver citations and other notices from any District, County, and Justice Courts in and for the State of Texas. I am competent to make this oath; I am not less than 18 years of age, I am not a party to the abovereferenced cause, I have not been convicted of a felony or a crime involving moral turpitude, and I am not interested in the outcome of the abovereferenced cause.

By: _____

Thomas R. Kroll SCH-3012,
Exp: 8/31/2019

### VERIFICATION

STATE OF TEXAS    §
COUNTY OF TRAVIS   §

    BEFORE ME, A NOTARY PUBLIC, on this day personally appeared  Thomas R. Kroll, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.

    Given under my hand and seal of office this June 15, 2017.

_____
NOTARY PUBLIC, STATE OF TEXAS

17-027120/1650513

HELEN LUPERCIO
Notary Public, State of Texas
Comm. Expires 11-04-2019
Notary ID 130429927

# EXHIBIT A-5

FILED
DALLAS COUNTY
7/7/2017 1:17 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:17-cv-01840-B   Document 1-1   Filed 07/13/17   Page 31 of 107   PageID 37

CAUSE NO. DC-17-06799

| | | |
|---|---|---|
| CLAY COCKERELL and | § | IN THE DISTRICT COURT OF |
| COCKERELL DERMATOPATHOLOGY, | § | |
| P.A., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CBS NEWS INC; JIM AXELROD; and | § | |
| EMILY RAND, | § | |
| | § | |
| Defendants. | § | 193RD JUDICIAL DISTRICT |

## DEFENDANTS' ANSWER, SPECIAL EXCEPTIONS, VERIFIED PLEAS, AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' ORIGINAL PETITION

COME NOW Defendants, CBS News Inc. ("CBS"), Jim Axelrod ("Axelrod"), and Emily Rand ("Rand") (collectively "Defendants") and file their Original Answer, Special Exceptions, Verified Pleas, and Affirmative Defenses to Plaintiffs' Original Petition (the "Petition").

## I.
## INTRODUCTION AND BACKGROUND

On June 7, 2017, Plaintiffs, Clay Cockerell ("Cockerell") and Cockerell Dermatopathology, P.A. ("CDP") (collectively, "Plaintiffs"), filed suit against Defendants in Dallas County alleging that certain CBS News reports of June 8, 2016 ("June 8, 2016 Report") and June 9, 2016 ("June 9, 2016 Report") (collectively referred to herein as the "Reports") were defamatory and constituted business disparagement.

### A.    CBS News Reports About a Multimillion Dollar Insurance Scam

The June 8, 2016 Report, which aired during "The CBS Evening News" and was posted online, exposed a multimillion dollar insurance scam operating out of multiple storefront locations in Killeen, Texas targeting military families who were insured by Tricare military insurance and others. *See* June 8, 2016 Report titled "U.S. military members duped to help pull

off insurance fraud" published on CBS website, a true and correct copy of which is attached hereto as Exhibit 1.  As reported, the families were induced to submit DNA and blood samples (which at least some were led to believe would be used for clinical research) in return for Wal-Mart gift cards.  *Id.*  As the June 8, 2016 Report noted, rather than clinical research, the samples were submitted for unnecessary and expensive screenings, including screenings for drugs like PCP, cocaine, and methadone.  *Id.*  CBS News further reported that CDP reportedly took an active role in conducting the tests and billing Tricare for more than $5 million.  *Id.*  Further, as reported, Cockerell's Clinical Laboratory Improvement Amendments ("CLIA")[1] number was used to bill these tests to the insurance companies.  *Id.*  The testing was done through a company named OriGen Laboratories ("OriGen" or "OriGen Laboratories"), but that is merely a d/b/a for CDP and Cockerell was, in fact, the owner of OriGen.   *See* Assumed Name Filing for CDP, Abandonment of Assumed Name Certificate for Origen by CDP, and Withdrawal of Assumed Name Certificate for OriGen listing Cockerell as the owner, true and correct copies of which are attached hereto as Exhibits 2a, 2b and 2c ("Exhibit 2"). The June 8, 2016 Report included an interview of a patient who received a number of $50 gift cards in exchange for submitting her samples and also detailed the fact that Defendants discovered numerous documents with highly sensitive personal information, including social security numbers, medical information, and photocopies of military identification cards, as well as DNA specimens, discarded in the shed by one of the storefronts.  *See* Exhibit 1.

On June 9, 2016, Defendants aired a second Report, which also aired during "The CBS Evening News" and was posted online, which discussed the larger problem with unnecessary

---

[1] Labs that receive Medicare or Medicaid payments must be properly certified through the Clinical Laboratory Improvement Amendments ("CLIA").  The Centers for Medicare and Medicaid Services state that "[t]he objective of the CLIA program is to ensure quality laboratory testing" and that the program covers more than 250,000 entities. *See* https://www.cms.gov/Regulations-and-Guidance/Legislation/CLIA/index.html?redirect=/CLIA/.

medical testing at government expense, and reported that the government was investigating the fraudulent conduct.  *See* June 9, 2016 Report titled "Feds investigating insurance fraud that duped U.S. military" published on CBS website, a true and correct copy of which is attached hereto as Exhibit 3.   The June 9, 2016 Report included interviews with personnel from the Pentagon and other investigators with the Department of Defense.  *Id.*  The June 9, 2016 Report reiterated the concern that CDP had billed Tricare millions of dollars for what appeared to be largely unneeded, and costly, drug testing.  *See id.*

Defendants reached out to Plaintiffs on numerous occasions while they were conducting their investigation.  They requested an interview with Cockerell many times to afford Plaintiffs an opportunity to respond to the allegations that had been uncovered during the investigation.  Cockerell initially stated during an on-camera interview, a portion of which appeared in the June 8, 2016 Report, that he runs a dermatopathology lab (referring to CDP), but that he does not own the genetic testing lab in question in the Reports.[2] *See* Exhibit 1.   Significantly, he conceded during the on-camera interview that the genetic testing lab in question used his contracts, but he again denied "running that lab."[3]  *Id.*  Cockerell was also asked about the use of his CLIA license number for billing purposes; that question went unanswered.  *Id.*   The brief interview was conducted outside CDP in Dallas after requests for a more formal and lengthier interview were denied.  In response to a number of specific questions directed to Plaintiffs, Plaintiffs ultimately admitted that some individuals may have operated "outside of the organization's strict compliance requirements."  *Id.*

---

[2] Defendants repeatedly asked for a more extensive interview with Cockerell, both before and after the brief on camera encounter.  Despite repeated requests, Cockerell never made himself available for an interview regarding the alleged improper conduct.

[3] This is contrary to prior statements made by Plaintiffs and to the corporate filings of Plaintiffs. *See e.g.,* Exhibit 2.

B.    **Plaintiffs' evolving story**

Throughout the CBS News investigation and following the Reports, Plaintiffs engaged in an odd pattern of communications attempting to explain who was responsible for the alleged wrongful conduct and what connection Plaintiffs had with the responsible party.  Prior to the Reports airing, Plaintiffs admitted to doing business as OriGen.  Later, Plaintiffs referred to having a vague "relationship" with OriGen but attempted to completely distance themselves from the alleged wrongful conduct by asserting that OriGen was solely responsible for the questionable tactics.  Of course, this assertion ignored the fact that OriGen was operating as a d/b/a of CDP.  *See* Exhibit 2.  As the investigation continued and after the Reports aired, Plaintiffs began assigning blame to ProGen Lab Systems, LLC ("ProGen").  Pro-Gen is a third-party management group, established by Cockerell's nephew, Quintan Cockerell, which also holds a d/b/a for OriGen Laboratories[4] and which allegedly oversaw and managed some of the testing that occurred at the various laboratories.  In the Petition, Plaintiffs now blame ProGen for the questionable testing.[5]

Plaintiffs' first statement following the June 8, 2016 Report and titled "In response to the CBS News story that aired on June 8, 2016" is just one of many inconsistent statements made regarding who was to blame for the alleged wrongdoing.  The statement appeared on the CDP website for a short time before being taken down.  *See* June 8, 2016 statement titled "In response to the CBS News story that aired on June 8, 2016," a true and correct copy of which has been obtained through the internet archive website www.waybackmachine.com and is attached hereto as Exhibit 5.  The statement acknowledged, however, that CDP has "relationships" with OriGen

---

[4] *See* Assumed Name Filings for ProGen and ROAM Details for same (ProGen), true and correct copies of which are attached hereto as Exhibits 4a, 4b and 4c ("Exhibit 4").

[5] *See* Plaintiff's Petition, p. 7 ("The individuals who allegedly engaged in improper conduct as outlined in the CBS story were affiliated with a company called ProGen, which is the laboratory business that performed the diagnostic testing.").

and that OriGen is owned by Cockerell.  *Id.*  The statement further stated that Cockerell oversaw and managed the anatomic and dermatopathology testing performed at CDP and that ProGen oversaw and managed the molecular, genomics and toxicology testing.  *Id.*  Finally, the statement claimed that CDP and OriGen had taken "immediate action, including terminating individuals and relationships with those that acted in violation of the laboratory's compliance policies."  *Id.*

Plaintiffs next published a "Statement of Clarification," dated July 11, 2016, and posted the statement on their website.  *See* July 11, 2016 Statement of Clarification, a true and correct copy of which is attached hereto as Exhibit 6.  In the "Statement of Clarification," Plaintiffs again acknowledged that they had a "relationship" with OriGen and that OriGen was "operated by ProGen, a third-party lab manager."  *Id.*  The "Statement of Clarification" failed, however, to provide any further clarification regarding Plaintiffs' "relationship" with OriGen.  *Id.*  The "Statement of Clarification" also shifted the blame, for the first time, from Plaintiffs and OriGen to **ProGen**.  *Id.* (noting that ProGen was the entity associated with "individuals operating outside of the company's compliance procedures" and the entity that took "immediate action" in response).

A letter posted by Cockerell[6] in response to an online article regarding the Reports only adds to the confusion.  *See* August 24, 2016 Online Report and Comments titled "Texas Dermatopathology Laboratory Under Fire for Genetic Testing Scheme Targeting Soldiers Near Fort Hood" published on the Dark Daily website, a true and correct copy of which is attached hereto as Exhibit 7.[7]  The letter stated that Cockerell had a "business relationship" with OriGen

---

[6] The letter, which is on pages 6-7,  starts out "Dear Colleague, This is Clay Cockerell, MD and the following is a synopsis . . .."
[7] The Dark Daily website report also quotes from part of the since-removed June 8, 2016 CDP Statement that is attached hereto as Exhibit 5.

before admitting that OriGen "operates in the building where we work and does molecular pathology, genomics and other diagnostic testing that is managed by a third party lab management company." *Id.* at p. 6.  The letter also stated that Cockerell believed that OriGen had hired the "outside sales reps" that were "responsible for the scheme." *Id.*  Finally, the letter acknowledged that OriGen used Cockerell's CLIA certificate and contracts. *Id.*[8]

Thus, Cockerell and CDP originally admitted to doing business as OriGen prior to the airing of the June 8, 2016 Report, but shortly thereafter attempted to disassociate themselves from OriGen before again acknowledging a vague "relationship" with OriGen and stating that OriGen was run by a rogue third-party lab manager, ProGen, who is now to blame for the alleged activities.  In any event, all of these after-the-fact assertions are inconsistent with the corporate documents on file with the Secretary of State's office and Dallas County and appear to be calculated to obfuscate the relationship between the companies owned by Plaintiffs and his nephew. *See* Exhibits 2 and 4.

**C.     Sworn statements by Dr. Cockerell and others reveal the interrelatedness of the various entities**

While Cockerell and CDP have attempted to distance themselves from ProGen and the alleged wrongdoing, records on file with the Texas Secretary of State and Dallas County show that neither Cockerell nor CDP can plausibly maintain that they had no involvement with either ProGen or OriGen.  Filings with Dallas County and the Secretary of State, **sworn to and/or acknowledged by both Cockerell and his nephew**, show that both Cockerell Dermatopathology and ProGen operated under the assumed name of OriGen Laboratories at all times relevant to this action. *See, e.g.,* Exhibit 2b; Exhibit 2c; Exhibit 4a; Exhibit 4b.  Clay

---

[8] In response to this letter, at least four different people posted comments on the bulletin board attached to the online article detailing unexpected bills they received from Defendants after providing specimens for testing.  Exhibit 7, pp. 7-9.

Cockerell was listed as an owner of OriGen Laboratories at all times relevant to this action. [9]  *See* Exhibit 2b; Exhibit 2c.  Filings with the Texas Secretary of State likewise confirm that CDP and ProGen operated under the name OriGen Laboratories at all times relevant to this action.  *See* Exhibits 2, 4, and Business Organizations Overview of CDP, a true and correct copy of which is attached hereto as Exhibit 8.

Moreover, these public filings indicate that CDP and ProGen, operating under the name OriGen Laboratories, each shared the office address currently occupied by CDP.  *Compare* Exhibit 4b (listing office address for ProGen, with assumed name OriGen, as 2110 Research Row, Suite 100, Dallas, TX 75235) *with* Exhibit 8 (listing office address for CDP, with assumed name OriGen, as 2110 Research Row, Suite 100, Dallas, TX 75235).  Clay Cockerell's position as owner of OriGen and the registered agent for CDP d/b/a OriGen and the signature of Cockerell's nephew, Quintan, on the Assumed Name Filing for ProGen removes any doubt as to whether the companies enjoyed strong ties with one another.  *See* Exhibit 2; Exhibit 4.

**D.**   **The evidence shows that the Reports are substantially true and did not cause harm to Plaintiffs**

These significant connections between the companies belie Cockerell's and CDP's denial of a relationship with the individuals they now claim were the real wrongdoers.

- First and foremost, Cockerell admitted during an on-camera interview that the labs in question used Cockerell's contracts.  *See* Exhibit 1.

- Second, Cockerell's CLIA license number was used to submit the specimens and process the billing of the unneeded tests.  *See* Exhibit 7.

- Third, according to the official documents filed with the Dallas County Clerk, Plaintiff Clay Cockerell is listed as an *owner* of OriGen Laboratories.  *See* Exhibit 2c.

- Fourth, filings with Dallas County and the Texas Secretary of State clearly

---

[9] Interestingly, as seen by the Withdrawal of Assumed Name Certificate for OriGen, after the Reports aired, Plaintiffs opted to abandon the use of the name OriGen Laboratories. *See* Exhibit 2b; Exhibit 2c.

show that Cockerell, CDP, and ProGen each did business as OriGen Laboratories at all times relevant to this action.  *See* Exhibit 2; Exhibit 4.

- Finally, both CDP and ProGen shared the same office, specifically 2110 Research Row, Suite 100, Dallas, Texas 75235. *See* Exhibit 4b; Exhibit 8.

Cockerell and CDP, therefore, cannot state that they did not have any connection to OriGen and ProGen, the companies they now claim were associated with the individuals that committed the alleged wrongful actions discussed in the Reports.

CDP and Cockerell's assertion that Defendants acted in a rush to judgment rings equally hollow given Defendants' attempts to seek an interview with Cockerell, the doctor whose CLIA number was used for the billing to the insurance companies and whose contracts were admittedly used to operate the labs involved.  Cockerell refused to provide an opportunity for a meaningful on-camera interview.  Thus, Cockerell cannot now credibly argue that Defendants took a "report first and ask questions later"[10] approach to the Reports given his decision not to actively participate in the process.

Finally, the June 8, 2016 Report and June 9, 2016 Report are not the first publications to question the business practices of CDP and OriGen.  Plaintiff CDP has an "F" rating with the BBB based, in part, on consumer complaints for billing issues and a patient that claims not to have had any knowledge that CDP would conduct a test on his specimen.  *See* BBB Business Profile for CDP, a true and correct copy of which is attached hereto as Exhibit 9.  Similarly, OriGen has a rating of "D+" with the BBB based, in part, on a complaint for the alleged failure to pay another laboratory for services rendered.  *See* BBB Business Profile for OriGen, a true and correct copy of which is attached hereto as Exhibit 10.  While Plaintiffs claim to have a self-

---

[10] *See* Plaintiffs' Petition, p. 1.

described "sterling reputation,"[11] these ratings indicate that the reputation of CDP and its associated company, OriGen, were not nearly as pristine as they would have this Court believe.[12]

## II.
## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every allegation contained in Plaintiffs' Original Petition and demand strict proof thereof. Defendants reserve the right to file amended pleadings in accordance with the Texas Rules of Civil Procedure. In support thereof, Defendants state the following:

## III.
## OBJECTION TO LEVEL THREE DISCOVERY CONTROL PLAN

Plaintiffs requested that this case be governed by a Level 3 Discovery Control Plan, and did so without providing any explanation for why the extraordinary measure of permitting a Level 3 Discovery Control Plan is necessary or appropriate. Defendants object. This is a simple defamation and business disparagement claim and is not the sort of complex case that would require a Level 3 Plan or a plan "tailored to the circumstances of the specific suit." *See* TEX. R. CIV. P. 190.4(a). Thus, Defendants submit that a Level 2 Discovery Control Plan is appropriate and request that the Court order that discovery be conducted under the default of Level 2.

## IV.
## SPECIAL EXCEPTIONS

Pursuant to Rule 91 of the Texas Rules of Civil Procedure, Defendants specially except to the Petition and ask the Court to order Plaintiffs to replead and cure their pleading defects. The Petition does not follow the "fair notice" standard of pleadings in Texas, which looks at whether a party can ascertain from the pleadings the nature and basic issues of the controversy

---

[11] *See* Plaintiffs' Petition, p. 2.
[12] The comments posted in response to the August 24, 2016 Dark Daily website report also indicate that Plaintiffs' reputation is viewed by some as less than sterling. *See* Exhibit 7, pp. 7-9.

and what testimony will be relevant.  *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896 (Tex. 2000); TEX. R. CIV. P. 45(b); TEX. R. CIV. P. 47(a).  Specifically, Defendants specially except to the following:

1.      Without waiving the right to plead further, Defendants specially except to Paragraph 12 of the Petition, since Plaintiffs claim that "[a]ll conditions precedent have been performed or have occurred" when in fact Plaintiffs have failed to comply with the Defamation Mitigation Act.  The Defamation Mitigation Act anticipates a pre-suit notification of a claim with, among other things, specific allegedly defamatory statements identified, so that the parties can discuss whether a retraction, clarification or correction is warranted and attempt to mitigate any damages.  Plaintiffs did not timely request a retraction, clarification or correction prior to filing suit or within 90 days of the publication, instead filing this lawsuit without notice on the eve of limitations.  *See* TEX. CIV. PRAC. & REM. CODE §73.055.  As detailed in Texas Civil Practice & Remedies Code §73.055, a request for retraction under the Defamation Mitigation Act must (1) state with particularity every statement alleged to be false and defamatory and, to the extent known, the time and place of publication, (2) allege the defamatory meaning of the statement, and (3) specify the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.  TEX. CIV. PRAC. & REM. CODE §73.055(d).  In accordance with Texas Civil Practice & Remedies Code §73.057 of the Act, Defendants attach hereto and incorporate fully herein as Exhibit 11 the sworn verification of Nicholas Poser proving that Defendants did not receive a written request for a correction, clarification, or retraction prior to the filing of this suit as required by §73.055.

2.      Without waiving the right to plead further, Defendants specifically except to paragraphs 20-23, 26, 29-33, 41 and 47, among others, for failing to satisfy the notice pleadings

10

requirement in Texas and the *in haec verba* requirement in defamation cases.  When a petition alleges defamation, the requirement that the complained of statements be specified in the petition has long been the law in Texas.  *See Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721, 724 (Tex. 1889) ("The *very language relied on* as libelous must be set out in the Petition for libel and not the substance and meaning of the language."); *see also Rio Grande Valley Gas Company v. Caskey*, 33 S.W.2d 848, 849 (Tex. Civ. App.—San Antonio 1930, no writ) ("[i]t is always necessary to set out in the Petition the portions of a writing upon which a libel is based ..."); *Newton v. Dallas Morning News*, 376 S.W.2d 396, 400 (Tex. Civ. App.—Dallas 1964, no writ). Plaintiffs' allegations are vague, ambiguous, and fail to properly apprise Defendants as to which specific statement(s), if any, contained in what Reports are allegedly false and/or defamatory concerning Plaintiffs.  Instead, Plaintiffs make vague references to how the Reports are allegedly "misleading" or created a false impression.  Plaintiffs must plead the specific language that Plaintiffs allege is defamatory and false.  *See Perkins v. Welch*, 57 S.W.2d 914 (Tex. Civ. App.—San Antonio 1933, no writ).  Because Plaintiffs do not specifically identify the allegedly defamatory statement(s), Plaintiffs should be required to replead to specifically allege what statement(s), if any, they assert are defamatory, as well as when and where they were made, and if they fail to do so, the Petition should be dismissed.

3.     Without waiving the right to plead further, Defendants specially except to the "Prayer" which requests actual and exemplary damages.  Because Plaintiffs failed to comply with the Defamation Mitigation Act and failed to request a retraction within 90 days of publication, Plaintiffs are precluded from recovering exemplary damages from Defendants. TEX. CIV. PRAC. & REM. CODE §§73.055(c), 73.059; *Hancock v. Variyam*, 400 S.W.3d 59, 65–66 (Tex. 2013); *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

11

4.      Without waiving the right to plead further, Defendants specially except to the "Prayer" because it asks for attorney fees in a general allegation but does not specify what statute makes them available in this type of lawsuit.

## V.
## VERIFIED PLEAS

1.      Pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, there is a defect of parties because Plaintiffs have incorrectly sued CBS News Inc.  As discussed in the attached Verification of Nicholas Poser, Defendant CBS News Inc. is not the correct legal name of the entity that broadcast and published the Reports at issue.  The correct name of that entity is CBS Broadcasting Inc., which owns and operates the CBS News Division of which "The CBS Evening News" is a part.

2.      Pursuant to Rules 54 and 93(16) of the Texas Rules of Civil Procedure, Defendants deny that all conditions precedent have been performed or have occurred. Specifically, Defendants deny that Plaintiffs have complied with the requirements of the Defamation Mitigation Act, Texas Civil Practice & Remedies Code §§73.055 and 73.056, in that Defendants were not served with a "timely and sufficient" request for a retraction as defined by §73.055 prior to the lawsuit being filed, and still have not been served with a timely and sufficient retraction request pursuant to the Act.[13]

## VI.
## AFFIRMATIVE DEFENSES

3.      Plaintiffs' claims are barred and subject to dismissal, with an award of attorney's fees and sanctions in favor of Defendants, by the Texas Citizens Participation Act, codified at Texas Civil Practice & Remedies Code Chapter 27.   The purpose of the Texas Citizens

---

[13] *See* Exhibit 11, Verification of Nicholas Poser.

Participation Act is to encourage and safeguard the constitutional rights of persons to speak freely about matters of public concern to the maximum extent permitted by law.

4.      Defendants were exercising their right to free speech when making the statements at issue. Tex. Civ. Prac. & Rem. Code §§27.001(3), (7).

5.      In determining whether a legal action was brought to deter or prevent the Defendants from exercising their constitutional rights, one must consider the impact on future speech.  As the Texas Supreme Court has long held, "[e]very defamation action that the law permits necessarily inhibits free speech." *Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198 (Tex. 1992), citing *New York Times v. Sullivan*, 376 U.S. 254, 272, 84 S. Ct. 710, 721 (1964) ("whatever is added to the field of libel is taken from the field of free debate.").

6.      Plaintiffs' claims are barred because the statement(s) alleged to be made were true or substantially true and, as such, are protected by Texas Civil Practice & Remedies Code §73.005, Texas common law, Article I, Section 8 of the Texas Constitution and the First and Fourteenth Amendments to the United States Constitution.  As an initial matter, neither Cockerell nor CDP has disputed the factual statements in the June 8, 2016 Report and June 9, 2016 Report that CDP performed the tests at issue.  Moreover, the connections between Plaintiffs and ProGen and OriGen are clear and direct rather than tenuous, as Plaintiffs would have this Court believe.  Despite Plaintiffs' attempts to distance themselves from the alleged misconduct by blaming individuals associated with another company, OriGen, and its third-party manager, ProGen, Cockerell has already admitted that each of the labs operated under his contracts and the billing for each was done through his CLIA license.  Further, Cockerell is listed as the owner of OriGen and filings with the Dallas County and the Texas Secretary of

State show that Cockerell, CDP and ProGen operated under a single name, OriGen, at all times relevant to this action.  *See* Exhibit 2; Exhibit 4. Moreover, multiple individuals have made similar allegations regarding unexpected billing for questionable tests in response to the facts stated in these Reports.  *See* Exhibit 7, pp. 7-9.  Plaintiffs cannot show the Reports were not, at a minimum, substantially true.

7.      Plaintiffs have the burden of showing that the statements at issue are materially false as they relate to Plaintiffs.  In the alternative and without waiving the foregoing, Defendants plead substantial truth as an affirmative defense under the common law and under Texas Civil Practice & Remedies Code §73.005(a).

8.      Plaintiffs' claims are barred because the statement(s) at issue were opinion and/or rhetorical hyperbole.

9.      Plaintiffs' claims are barred because the statement(s) alleged to be made are not capable of a defamatory meaning.

10.      In preparing the statements at issue, Defendants accurately reported on allegations made by a third-party regarding a matter of public concern which is protected under Texas Civil Practice & Remedies Code §73.005(b).

11.      Plaintiffs' claims are barred by common law and statutory and constitutional privileges, such as the fair report privilege, the neutral report privilege, the fair comment privilege, the common interest privilege, the privileges found in Section 73.002 of the Texas Civil Practice & Remedies Code and the privileges of free speech and free press found in Article I, Section 8 of the Texas Constitution as well as the First and Fourteenth Amendments to the United States Constitution.  To overcome the privileges, Plaintiffs must establish, by clear and

convincing evidence that Defendants acted with actual malice.  Plaintiffs have not pled facts demonstrating actual malice, nor can they prove actual malice.

12.     The statements at issue are privileged as a fair, true and impartial account of an official proceeding by governmental entities, pursuant to the common law and Texas Civil Practice & Remedies Code §73.002(b)(1).  To overcome the privilege, Plaintiffs must establish, by clear and convincing evidence that Defendants acted with actual malice.  Plaintiffs have not pleaded facts demonstrating actual malice, nor can they prove actual malice.

13.     The statements at issue are privileged as a reasonable and fair comment on a matter of public concern published for general information pursuant to the common law and Texas Civil Practice & Remedies Code §73.002(b)(2).  To overcome the privilege, Plaintiffs must establish, by clear and convincing evidence, that Defendants acted with actual malice.  Plaintiffs have not pled facts demonstrating actual malice, nor can they prove actual malice.

14.     Plaintiffs are public figures and Defendants did not publish the statements believed to be the subject matter of Plaintiffs' suit with actual malice, and Plaintiffs have not pled facts demonstrating actual malice, nor can they prove actual malice.

15.     The statements at issue concern a matter of legitimate public concern.  To impose liability upon Defendants for allegedly false implications that might be drawn from the true facts reported would violate Article I, Section 8 of the Constitution of Texas, the First and Fourteenth Amendments to the Constitution of the United States, Texas common law, and the Texas Citizens Participation Act, codified at Texas Civil Practice & Remedies Code Chapter 27.

16.     Plaintiffs have suffered no damages and are not entitled to an award of damages of any sort as a result of Defendants' publications.

17.     Plaintiffs' claims are barred because the alleged injuries to Plaintiffs and damages, if any, are due solely to other causes and matters that are not related to Defendants' statements, actions, operations, or conduct.

18.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own contributory negligence.

19.     Plaintiffs' damages, if any, were caused by Plaintiffs' own actions and/or omissions.

20.     On information and belief, one or more third-parties are responsible for the damages, if any, caused to Plaintiffs.

21.     Pursuant to Chapter 73 of the Texas Civil Practice & Remedies Code, Defendants assert and specially plead the affirmative defense of mitigation of damages. Specifically, Defendants plead and will offer evidence at trial of the following matters: 1) Plaintiffs' prior reputation; 2) the facts and circumstances under which the allegedly libelous publication was made; 3) evidence of Defendants' intent when the allegedly libelous publication was made; and 4) lack of damages suffered by Plaintiffs.

22.     Plaintiffs have failed to mitigate their damages, if any.

23.     The statements made by the Defendants did not cause any special damages.

24.     Defendants plead the affirmative defense of justification and/or excuse based on legal right.

25.     Defendants plead the defense of good faith.

26.     Plaintiffs are barred from recovering exemplary damages by the protections afforded under the First Amendment and Fourteenth Amendment to the United States Constitution and under Article I, Section 8 of the Texas Constitution and under the Due Process

Clauses of the Texas and the United States Constitutions; Defendants invoke any and all Constitutional, statutory and common law limitations on the recovery of actual or exemplary damages.

27.     Plaintiffs have failed to timely and sufficient request a retraction pursuant to Texas Civil Practice & Remedies Code §73.051, *et seq.* and therefore are barred from recovering exemplary damages.  *See* TEX. CIV. PRAC. & REM. CODE §73.055(c).

## VII.
## PRAYER

Defendants request that the Court order Level Two discovery in this case, sustain Defendants' Special Exceptions, and require Plaintiffs to remedy their pleading defects, and if Plaintiffs do not cure their defects, strike Plaintiffs' Original Petition, assess costs against Plaintiffs, and award Defendants all other legal or equitable relief to which they may be entitled.

Respectfully submitted,

HAYNES AND BOONE, LLP


By:*/s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
Laura.prather@haynesboone.com
Catherine L. Robb
State Bar No. 2407924
Catherine.robb@haynesboone.com

600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:    (512) 867-8400
Telecopier:    (512) 867-8470

Mark A. Flores
State Bar No. 24076385
Mark.flores@haynesboone.com

301 Commerce Street, Suite 2600
Fort Worth, Texas 76102-4140

Telephone:    (817) 347-6600
Telecopier:   (817) 348-2323

**ATTORNEYS FOR DEFENDANTS CBS NEWS, INC., JIM AXELROD, AND EMILY RAND**

## <u>CERTIFICATE OF SERVICE</u>

      The above signed certifies that a true and correct copy of the foregoing was served *via* e-service on the 7th day of July, 2017 to:

Jeffrey M. Tillotson
Jonathan R. Patton
Joseph A. Irrobali
Tillotson Law
750 North St. Paul Street, Suite 610
Dallas, TX 75201

**COUNSEL FOR PLAINTIFFS**

*/s/ Laura Lee Prather*

Laura Lee Prather

CAUSE NO. DC-17-06799

| | | |
|---|---|---|
| CLAY COCKERELL and | § | IN THE DISTRICT COURT OF |
| COCKERELL DERMATOPATHOLOGY, | § | |
| P.A., | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CBS NEWS INC; JIM AXELROD; and | § | |
| EMILY RAND, | § | |
| | § | |
|     Defendants. | § | 193RD JUDICIAL DISTRICT |

## EXHIBIT LIST

Exhibit 1    June 8, 2016 Report titled "U.S. military members duped to help pull off insurance fraud" published on CBS website

Exhibit 2a    January 5, 2016, Assumed Name Filing for Cockerell Dermatapathology, P.A.

Exhibit 2b    December 16, 2016, Abandonment of Assumed Name Certificate Abandoning Name OriGen Laboratories by CDP

Exhibit 2c    December 13, 2016, Withdrawal Notice of An Assumed Name abandoning name OriGen Laboratories by Cockerell

Exhibit 3    June 9, 2016 Report titled "Feds investigating insurance fraud that duped U.S. military" published on CBS website

Exhibit 4a    December 29, 2015, Dallas County Assumed Name Certificate for ProGen Lab Systems, L.L.C.

Exhibit 4b    December 29, 2015, TX SOS Assumed Name Certificate of ProGen Lab Systems, L.L.C.

Exhibit 4c    ROAM Details Assumed Name Filing for ProGen

Exhibit 5    June 8, 2016 statement titled "In response to the CBS News story that aired on June 8, 2016" previously posted on CDP's website (now available on internet archive website www.waybackmachine.com)

Exhibit 6    "Statement of Clarification," dated July 11, 2016 posted on CDP's website

Exhibit 7   August 24, 2016 Online Report, with comments, titled "Texas Dermatopathology Laboratory Under Fire for Genetic Testing Scheme Targeting Soldiers Near Fort Hood" published on the Dark Daily website

Exhibit 8   Business Organizations Overview for CDP showing assumed name of OriGen Laboratories

Exhibit 9   BBB Business Profile for CDP as of June 21, 2017

Exhibit 10   BBB Business Profile for OriGen Laboratories as of June 21, 2017

Exhibit 11   Verification of Nicholas Poser

# EXHIBIT 1



CBS News / **CBS Evening News** / CBS This Morning / 48 Hours / 60 Minutes / Sunday Morning / Face The Nation / CBSN



By **JIM AXELROD, EMILY RAND** / **CBS NEWS** / *June 8, 2016, 7:09 PM*

# U.S. military members duped to help pull off insurance fraud

7 Comments / Share / Tweet / Stumble / Email

CBS News is exposing an insurance scam -- and you, as a taxpayer, are a victim.

It is especially egregious because members of the U.S. military are being duped to help pull off the fraud.

A club in West Hollywood, with pulsing music, might not seem like the ideal location for a business meeting. But this was where we were invited by Dustin Warren, a salesman working with a lab that conducts genetic testing and drug screening.

CBS News recorded the meeting undercover.

Warren gave us a taste of his hardball pitch he uses to get doctors to order the tests.

"If you're not doing this, you're a pile of s**t. You don't care about people. You don't care about cancer. And you don't care about your patients. Bottom line," he said.



Dustin Warren. / **CBS NEWS**

With the right contacts, Warren told us, we could expect to make big money.

"Sixty f***** grand a month," he said.

Thanks, in part, to genetic tests that assess cancer risk. He said military insurance, called Tricare, reimburses the most for a single test.

"We were banging them for 12 to 16 grand and we dialed it back to 8,000 because we're like, we're going to get f***... this isn't going to be good for anybody," Warren said.

The tests are conducted and billed by a lab in Dallas, Cockerell Dermatopathology, which offers another test -- a drug screening. And that screening made the lab more than $5 million dollars from Tricare last year.

To entice soldiers to be screened -- so Tricare could be billed -- others working with the Cockerell Lab set up a makeshift clinic in a strip mall just a mile from the gates of Fort Hood.

CBS News has learned that beginning last summer and running all the way through this past February, soldiers would line up every day in this parking by the dozens and provide their DNA, urine and Tricare ID cards in exchange for a $50 Wal-Mart gift card.

"It was a lot of people. It was full," said Linda Bozeman.

Bozeman -- the wife of a soldier -- told us she visited the clinic a few times last year to make a little extra money for Christmas presents.

"They said they had this clinical research going and that they paid you by Wal-Mart cards, so you'd give your urine," she said.

But it wasn't for research.



Linda Bozeman speaking with CBS News' Jim Axelrod. /  **CBS NEWS**

Documents show Cockerell Dermatopathology used Bozeman's samples to bill Tricare 418 separate times, unneeded screening for dozens of drugs like PCP, cocaine and methadone. Nearly $7,000 at tax payers expense.

And this wasn't the only place near Fort Hood where soldiers lined up. There was also a storefront a few blocks away. They were only there a little while before setting up shop at a more professional looking site.

A few months ago, they moved a few miles down the road, to another location. Now from the looks of things they are no longer in business there either, but CBS News found plenty of evidence in the trash, that they had been.

Soldiers' social security numbers, medical information, DNA specimens and more than 60 photocopies of military IDs, including Linda Bozeman's were found.

Which left us with a lot of questions for Cockerell Dermatopathology, and its owner Dr. Clay Cockerell, a dermatologist.

"I run a dermatopathology laboratory, I've been doing that for well over 20 years," he said.



Dr. Clay Cockerell. /  **CBS NEWS**

Our producer caught up with him outside the lab.

"I'm going to take off ... that's not my lab," he said.

He said he is not running the lab.

In a written statement, representatives of Cockerell Dermatopathology confirmed it is his lab.

They also said, "There is a possibility that individuals were operating outside of the organization's strict compliance requirements."

The lab said it is voluntarily refunding what it calls "significant amounts of money" -- but wouldn't say how much or to whom.

CBS News asked the Pentagon if it's investigating -- they told CBS News they can't discuss it.

© 2016 CBS Interactive Inc. All Rights Reserved.

---

7 Comments /   Share /   Tweet /   Stumble /   Email

NEWEST | OLDEST | TOP COMMENTS                    COMMENTING FAQS / GUIDELINES

**RADIOBLOCKER**  *June 10, 2016 7:7AM*

If someone offered me a $50 gift card for unnecessary medical tests not ordered by my doctor, I'd know it was a fraud immediately. Why is no one mentioning the culpability of the people who signed up for the tests? Because they are military and their families? I

applaud the sacrifices that military personnel and their families make everyday, but that does not remove them from the need to employ common sense, follow responsibilities, and the law.

LIKE /   REPLY

---

**37213**  *June 9, 2016 4:4AM*

Thank you, CBS News, for exposing this.

1 LIKE /   REPLY

---

**BDMACG**  *June 8, 2016 8:8PM*

I bet this doctor is a TEA-GOP member....

2 LIKE /   REPLY

---

**REZQEWR**  *June 8, 2016 11:11PM*

**@bdmacg** Got verifiable evidence to back up that claim?

LIKE /   REPLY

> **AUS22**  *June 9, 2016 2:2AM*
>
> **@Rezqewr @bdmacg**  You really don't understand the word "bet" do you?
>
> 2 LIKE /   REPLY

---

**QUEST6249**  *June 9, 2016 8:8AM*

**@Rezqewr @bdmacg**

deceit, abuse of federal programs, and lies... Hillary must be involved..

LIKE /   REPLY

---

**JANERIC123**  *June 8, 2016 8:8PM*

Business has one goal with no soul.

# EXHIBIT 2a

OFFICE OF JOHN F. WARREN
COUNTY CLERK, DALLAS COUNTY, TEXAS



01/07/2016 12:54:06 PM

201603304454

ANINC  1/2

### ASSUMED NAME CERTIFICATE FOR AN INCORPORATED BUSINESS OR PROFESSION

NOTICE: "CERTIFICATES" ARE VALID NOT TO EXCEED 10 YEARS FROM THE DATE FILED IN THE
COUNTY CLERK'S OFFICE CHAPTER 71, SECT. 151(a), TITLE 5 BUSINESS AND COMMERCE CODE
THIS CERTIFICATE PROPERLY EXECUTED IS TO BE FILED IMMEDIATELY WITH THE COUNTY CLERK

NAME UNDER WHICH BUSINESS OR PROFESSIONAL SERVICES IS OR WILL BE CONDUCTED:

_OriGen Laboratories_
(Print or Type)

Address: _2110 Research Row, Suite 100_

City: _Dallas_   State: _TX_   Zip Code: _75235_

1. The name of the incorporated business or profession as stated in its Articles of Incorporation or comparable document is:
_Cockerell Dermatopathology, P.A._

2. The state, country, or other jurisdiction under the laws of which it was incorporated is _Texas_
and the address of its registered or similar office in that jurisdiction is
_2110 Research Row, Suite 100, Dallas, TX 75235_

3. The period, not to exceed ten years, during which this assumed name will be used is _10 year_

4. The corporation is a (circle one) business operation, non-profit corporation, professional corporation, (professional association)
or other type of corporation (specify) _____

5. If the corporation is required to maintain a registered office in Texas, the address of the registered office is
_2110 Research Row, Suite 100, Dallas, TX 75235_ and
the name of its registered agent at such address is _Clay J. Cockerell_. The address of
the principal office (if not the same as the registered office) is: _same_

6. If the corporation is not required to or does not maintain a registered office in Texas, the office address in Texas is:
_N/A_   and if the corporation is not incorporated, organized or associated
under the laws of Texas, the address its place of business in Texas is: _____, and the office
address elsewhere is: _____

7. The county or counties where business or professional services are being or are to be conducted or rendered under such
assumed name are (if applicable, use the designation "all" or "all except _All_ ").

8. If this instrument is executed by the attorney-in-fact, the attorney-in-fact hereby states that is has been duly authorized, in
writing, by his principal to execute and acknowledge this instrument.

_Signature_ Corp. Officer, representative
or attorney-in-fact of the corporation

THE STATE OF TEXAS, COUNTY OF DALLAS
BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared _Hal Rose_.
Known to me to be the person(s) whose name(s) is/are the subscribed to the foregoing instrument and, under oath, acknowledged
to me that (s) he signed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, on _JANUARY 5_   20 _16_

JOHN F. WARREN, COUNTY CLERK
DALLAS COUNTY, TEXAS

By _____, or
Deputy County Clerk

_Sheri Johnson_
Notary Public in and for Dallas County

SHERI JOHNSON
My Commission Expires
January 19, 2019

Form No 4243(Rev. 02-10)

# EXHIBIT 2b

**Form 504**
**(Revised 05/11)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
**Filing Fee: $10**



**Abandonment of Assumed
Name Certificate**

This space reserved for office use.

**F I L E D**
**In the Office of the**
**Secretary of State of Texas**

**DEC 16 2016**

**Corporations Section**

## Assumed Name

1.  The assumed name to be abandoned is:      OriGen Laboratories

2.  The assumed name certificate was filed with the secretary of state on:   01/25/2016
                                                                       *mm/dd/yyyy*

## Entity Information

3.  The legal name of the entity abandoning the assumed name is:

Cockerell Dermatopathology, PA
*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents,
if not filed with the secretary of state.*

4.  The file number, if any, issued to the entity by the secretary of state is:   801750722

5.  The office address of the entity in its jurisdiction of formation is:

2110 Research Row, Suite 100

Dallas, Texas 75235

> (Complete item 6 *only* when the entity is required by law to maintain a registered agent/registered office in Texas.
> An entity required to complete item 6 does not complete item 7.  See instructions.)

6a.  The entity is required to maintain a registered office and agent in Texas.  The address of its
registered office in Texas is:

1445 Ross Avenue, Suite 2400, Dallas, Texas 75202

6b. The name of the registered agent at such address is:

Tom M. Dees, III

6c. The address of the principal office of the entity (if not the same as 6a) is:


> (Complete item 7 *only* if the entity is not required by law to maintain a registered agent/registered office in Texas.
> Complete item 7c only if the entity is not organized under the laws of Texas. See instructions.)

7a.  The entity is not required by law to maintain a registered agent/registered office in Texas. Its
principal office address in Texas is:

**RECEIVED**

Form 504                    **DEC 16 2016**                    3

**Secretary of State**

7b.  The address of the entity's principal place of business in Texas (if not the same as 7a) is:

_____

7c.  The entity is not organized under the laws of Texas. Its office address outside the state is:

_____

## County or Counties in which Assumed Name Filed

8.  The assumed name being abandoned was filed on the following dates in the following counties:

Dallas                                         2/1/2016
_____
*Name of County*                                *Date of Filing*

_____
*Name of County*                                *Date of Filing*

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity.  If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date:    12/13/2016


_____
Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

# EXHIBIT 2c

OFFICE OF JOHN F. WARREN
COUNTY CLERK, DALLAS COUNTY, TEXAS
1201 ELM ST, SUITE 2200 DALLAS, TEXAS 75270



201600353631
WITH AN 1/1

12/20/2016 08:57:23 AM

## WITHDRAWAL NOTICE OF AN ASSUMED NAME

NOTICE:      This "CERTIFICATE OF WITHDRAWAL," properly executed is to be filed immediately
with the County Clerk, as provided by law.

\*\*\*\*\*\*\*\*\*\*\*\*

### NAME OF BUSINESS BEING ABANDONED

Oriben Laboratories
print or type

BUSINESS ADDRESS     2110 Research Row, Suite 100

CITY   Dallas      STATE   TX   ZIP CODE   75235

1. Give Date original Assumed Name was filed in this office:   2/1/2016

2. Name other filing offices, if any, where you filed the same Assumed Name:   Texas Secretary of State

Each of the undersigned has this day withdrawn from or disposed of his interest in the above mentioned business and
is no longer connected with the same, and will not be responsible for debts contracted by said business after the filing
of the Withdrawal Notices as prescribed by law.

### NAME OF OWNERS

NAME   Clay J. Cockrell   SIGNATURE   Clay J Cockrell
(print or type)                         (print or type)

ADDRESS   2110 Research Row, Suite 100, Dallas TX   ZIP CODE   75235

NAME _____ SIGNATURE _____
(print or type)                         (print or type)

ADDRESS _____                         ZIP CODE _____

NAME _____ SIGNATURE _____
(print or type)                         (print or type)

ADDRESS _____                         ZIP CODE _____

NAME _____ SIGNATURE _____
(print or type)                         (print or type)

ADDRESS _____                         ZIP CODE _____

Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
12/20/2016 08:57:23 AM
$24.00

201600353631

THE STATE OF TEXAS, COUNTY OF DALLAS

BEFORE ME, THE UNDERSIGNED AUTHORITY,

on this day personally appeared _____

Clay J Cockerell

Known to me to be the person _____ whose name _____
is/are subscribed to the foregoing instrument of writing
and acknowledge to me that _____ he
executed the same for the purposes and considerations
therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, on   Dec. 13   20 16

BRENDA WANDER
My Commission Expires
July 27, 2019

By _____ Deputy

Form _____

JOHN F. WARREN, COUNTY CLERK

Notary Public in and for Dallas County

# EXHIBIT 3

## ◉ CBS EVENING NEWS

*By* **JIM AXELROD, EMILY RAND** / **CBS NEWS** / *June 9, 2016, 6:53 PM*

# Feds investigating insurance fraud that duped U.S. military

We have a follow-up to our CBS News investigation that exposed an insurance scam in which taxpayers are the victims.



*Play* **VIDEO**
**U.S. military members used to pull off insurance fraud**

Members of the U.S. military have been duped into getting unnecessary medical tests that are paid for by the Pentagon's insurance plan.

After our report aired Wednesday, CBS News confirmed the federal government has opened a criminal investigation.

A heap of trash dumped into a shed at a clinic near Fort Hood contained soldiers' social security numbers, medical information, DNA specimens, and more than 60 photocopies of military IDs.

As CBS News showed you last night, makeshift clinics offered soldiers $50 Walmart gift cards in exchange for their urine and DNA.

U.S. military members duped to help pull off insurance fraud
Questionable tactics used to profit from genetic testing boom

Some of those samples were sent to Cockerell Dermatopathology lab in Dallas -- which billed the military's insurance -- Tricare -- for millions of dollars worth of largely unneeded drug testing.

Agents with the Defense Criminal Investigative Service are now trying to determine who made money at Tricare's expense -- and how much.

On Thursday, Pentagon spokesman Peter Cook addressed CBS News' story.



**Gift cards used to lure patients for genetic test scam**

"Reports like this are obviously of concern to us and something we want to address," he said.

This is not the first time Tricare has been targeted by scammers.

"These criminals were filling sandbags with cash as quickly as they could before we cut it off," said Richard Thomas.

Until April, retired two-star General Richard Thomas ran Tricare. As CBS News reported last year, claims for custom made prescription creams called compounds had grown exponentially until the Pentagon stopped paying for most of them due to their dubious medical value.



General Richard Thomas walks with CBS News' Jim Axelrod. / **CBS NEWS**

Tricare was $1.3 billion in the hole.

Is that largely due to this fraudulent billing of compound drugs?

"Absolutely it was," said Thomas. "That was the biggest single source of us being overspent."

The Pentagon had to re-allocate money from its fuel budget to cover healthcare for the troops.

"What makes this especially egregious is the fact they were specifically going after our military force, and their families, and our veterans," said Thomas.

So far they've recovered about $240 million.

It appears from CBS News' reporting that another fraud is popping up. What does that say to Thomas?

"It's not over. The fight continues," he said. "We have to always have our scouts out and be vigilant."

Cockerell Dermatopathology tells CBS News there's a possibility individuals didn't follow the company's compliance requirements, and is voluntarily returning significant amounts of money.

One estimate pegs the number of soldiers duped in the scam to be at least 2000.

© 2016 CBS Interactive Inc. All Rights Reserved.

*8 Comments*  /

**NEWEST** | OLDEST | TOP COMMENTS

**GRUMPYJC**  *June 10, 2016 11:11AM*

The companies and individuals involved need to be throughly liquidated, jailed, and banned from any business venture that has any possibility of payment from the government, regardless of how many shill companies and individuals they create.

They should also be made to report to a federal probation officer every year to prove they are not still criminal ass----s.


If we could just get rid of all cheats of government funds, we would never be in debt again.

1 LIKE /    REPLY

---

**IMNOTIMPORTANT**  *June 9, 2016 7:7PM*

To paraphrase an important politician, "For profit business is not the cure of your problems. It may in fact be the cause of many of your problems."

3 LIKE /    REPLY

---

**SEEBSPOSTER**  *June 9, 2016 7:7PM*

The beloved God of the conservatives "Private Industry" ripped someone off?  Must be because of regulations....LOL.

4 LIKE /    REPLY

---

**XYLONNE**  *June 9, 2016 7:7PM*

What about that famous or infamous tax-free Foundation that belongs to three members of one family? Can you imagine how that will grow once they are in the Oval O. again and after their term? Wow, how ineffective our government is and will be when these win it this November. Wow, they are turning into "Ali Baba and the 40, oh forget it, into 3 thieves"...

1 LIKE /    REPLY

---

> **BILLFAIR**  *June 9, 2016 8:8PM*
>
> **@Xylonne** Oooo! Ooooo!  It must be one of these top tax exempt foundations:
>
> 10: Churches (Roman Catholic Church alone is worth $170 Billion!!!!)
> 9:  Hospitals
> 8:  Universities
> 7:  YMCA
> 6:  Goodwill
> 5:  The Smithsonian Institution
>
> 10: The NFL.. Yep... Football!
>
> I'm sorry.... What was the question again?
>
> 1 LIKE    REPLY

---

**FLAGSANDIRIS**  *June 9, 2016 7:7PM*

Let's hope everyone goes to prison, from that scummy pitchman to the lying weasel Dr who drove away.  Thank you CBS, keep up the good work.

4 LIKE /    REPLY

---

**RYKATSPOP**  *June 9, 2016 6:6PM*

We need more cruise missiles at $3 mil a pop.  We can use them somewhere or warehouse them and replace them again ten years from now at twice the cost.  Good stuff.  Good money down a toilet.

1 LIKE /    REPLY

---

**HITHERE!**  *June 9, 2016 6:6PM*

Why dont you go find the 2.3 TRILLION the Pentagon lost before 9/11.

2 LIKE /    REPLY

# EXHIBIT 4a

OFFICE OF JOHN F. WARREN
COUNTY CLERK, DALLAS COUNTY, TEXAS

20160000081?

ANINC 1/2

01/12/2016 11:29:36 AM

### ASSUMED NAME CERTIFICATE FOR AN INCORPORATED BUSINESS OR PROFESSION

NOTICE: "CERTIFICATES" ARE VALID NOT TO EXCEED 10 YEARS FROM THE DATE FILED IN THE
COUNTY CLERK'S OFFICE CHAPTER 71, SECT. 151(a), TITLE 5 BUSINESS AND COMMERCE CODE.
THIS CERTIFICATE PROPERLY EXECUTED IS TO BE FILED IMMEDIATELY WITH THE COUNTY CLERK

NAME UNDER WHICH BUSINESS OR PROFESSIONAL SERVICES IS OR WILL BE CONDUCTED:

OriGen Laboratories

(Print or Type)

Address: 2110 Research Row, Suite 100

City: Dallas                                State: Texas                  Zip Code: 75235

1. The name of the incorporated business or profession as stated in its Articles of Incorporation or comparable document is:
ProGen Lab Systems, L.L.C.

2. The state, country, or other jurisdiction under the laws of which it was incorporated is Texas
and the address of its registered or similar office in that jurisdiction is:
800 Brazos St., Ste. 400, Austin, Texas 78701

3. The period, not to exceed ten years, during which this assumed name will be used is: 10 years

4. The corporation is a (circle one) business operation, non-profit corporation, professional corporation, professional association
or other type of corporation (specify) limited liability company

5. If the corporation is required to maintain a registered office in Texas, the address of the registered office is
800 Brazos St., Ste. 400, Austin, Texas 78701                                                         and
the name of its registered agent at such address is Capitol Corporate Services, Inc.              . The address of
the principal office (if not the same as the registered office) is: 1445 Ross Ave., Suite 2400, Dallas, TX 75202

6. If the corporation is not required to or does not maintain a registered office in Texas, the office address in Texas is:
and if the corporation is not incorporated, organized or associated
under the laws of Texas, the address its place of business in Texas is: _____, and the office
address elsewhere is:

7. The county or counties where business or professional services are being or are to be conducted or rendered under such
assumed name are (if applicable, use the designation "all" or "all except All

8. If this instrument is executed by the attorney-in-fact, the attorney-in-fact hereby states that he has been duly authorized, in
writing, by his principal to execute and acknowledge this instrument.

_____
Signature Corp. Officer, representative
or attorney-in-fact of the corporation

THE STATE OF TEXAS, COUNTY OF DALLAS
BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Quintan Cockerell
Known to me to be the person(s) whose name(s) is/are the subscribed to the foregoing instrument and, under oath, acknowledged
to me that (s) he signed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, on December 29th 20 15

JOHN F. WARREN, COUNTY CLERK
DALLAS COUNTY, TEXAS

By_____, or
Deputy County Clerk

_____
Notary Public in and for Dallas County

Eric George Hahn
Commission Expires
01-07-2017

Form No 4243(Rev. 02-10)

# EXHIBIT 4b

| **Form 503**<br>**(Revised 09/13)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $25** | <br>**Assumed Name Certificate** | This space reserved for office use.<br><br>**FILED**<br>In the Office of the<br>Secretary of State of Texas<br><br>DEC 31 2015<br><br>**Corporations Section** |
| --- | --- | --- |

## Assumed Name

1. The assumed name under which the business or professional service is, or is to be, conducted or rendered is:   OriGen Laboratories

## Entity Information

2. The legal name of the entity filing the assumed name is:

ProGen Lab Systems, L.L.C.

*State the name of the entity as currently shown in the records of the secretary of state or on its organizational documents, if not filed with the secretary of state.*

3. The entity filing the assumed name is a: (Select the appropriate entity type below.)

☐ For-profit Corporation              ☑ Limited Liability Company

☐ Nonprofit Corporation              ☐ Limited Partnership

☐ Professional Corporation          ☐ Limited Liability Partnership

☐ Professional Association          ☐ Cooperative Association

☐ Other _____

*Specify type of entity. For example, foreign real estate investment trust, state bank, insurance company, etc.*

4. The file number, if any, issued to the entity by the secretary of state is:  802115353

5. The state, country, or other jurisdiction of formation of the entity is:  Texas

6. The entity's principal office address is:

2110 Research Row, Suite 100

*Street or Mailing Address*

| Dallas | TX | USA | 75235 |
| --- | --- | --- | --- |
| *City* | *State* | *Country* | *Postal or Zip Code* |

## Period of Duration

☑ 7a. The period during which the assumed name will be used is 10 years from the date of filing with the secretary of state.

**OR**

☐ 7b. The period during which the assumed name will be used is _____ years from the date of filing with the secretary of state (not to exceed 10 years).

**OR**

☐ 7c. The assumed name will be used until _____ (not to exceed 10 years).

*mm/dd/yyyy*

## County or Counties in which Assumed Name Used

8. The county or counties where business or professional services are being or are to be conducted or rendered under the assumed name are:

☑ All counties

☐ All counties with the exception of the following counties: _____

_____

☐ Only the following counties: _____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and also certifies that the person is authorized to sign on behalf of the identified entity. If the undersigned is acting in the capacity of an attorney in fact for the entity, the undersigned certifies that the entity has duly authorized the undersigned in writing to execute this document.

Date: _12/29/15_____

_____

Signature of a person authorized by law to sign on behalf of the
identified entity (see instructions)

# EXHIBIT 4c

OPR   Marriage   Historical   Historical          File        Dashboard      🛒 **Shopping cart is Empty**
      Records    Index       Book            Assumed
                                             Name or                          **olga.marshall@haynesboone.com**
                                             Submit
                                             Marriage
                                             Application

« **Back to search results**

**Dallas Details**                                    Results 1 - 1 of 1 for . (0.00 seconds)

## Document

| Instrument # | Date Recorded | Date of Document | Doc Type | Book Type | Book | Page |
|---|---|---|---|---|---|---|
| 201600008127 | 01/12/2016 | \| | ANINC | \| | \| | \| |

| Page Count | Recording Fees | Legacy | Completed | Image Status |
|---|---|---|---|---|
| 2 | $24.00 | 5 | Y | |

Note: If you have issues viewing images with your current Adobe PDF Reader, please upgrade to the newest Adobe Reader version.

**View Image Preview**   **View Full Screen Image Preview**

## Party

| Name | Role | Desigstatus | Corp | Seq |
|---|---|---|---|---|
| ORIGEN LABORATORIES | Grantor | | Y | 1 |
| PROGEN LAB SYSTEMS LLC | Grantee | | Y | 1 |

Add to Cart



## Returnee

| Customer Seq | Name | Date Returned |
|---|---|---|
| 1 | ORIGEN LABORATORIES, | 01/19/2016 |

Case 3:17-cv-01840-B   Document 1-1   Filed 07/13/17   Page 75 of 107   PageID 81

# EXHIBIT 5



CLINICIANS    PATIENTS    ABOUT US    NEWS & EVENTS    CONTACT US

## News & Events

- News
- Events
- Video Library

### *In response to the CBS News story that aired on June 8, 2016*

**JUN 08 2016**

**In response to the CBS News story that aired on June 8, 2016**

Cockerell Dermatopathology, P.A. is a Texas-based laboratory. While our core business is anatomic pathology and dermatopathology, we also have relationships with others that perform molecular, as well as genomics and toxicology work. The laboratory that does this business operates under the name Origen Laboratories and is owned by Clay Cockerell, M.D., an internationally-recognized physician with more than 30 years of experience in pathology.

Dr. Cockerell oversees and manages the anatomic and dermatopathology testing performed at the laboratory. The molecular, genomics, and toxicology testing is overseen and managed by ProGen Lab Systems, LLC, an independent laboratory management services organization.

On any given day, the laboratory receives orders from physicians requesting that certain tests and screenings be performed on their patients. The results of any qualifying test or screening are sent back to the prescribing physicians, who then decides how best to utilize the results for the benefit of their patients' plan of care.

We take pride in operating with the highest level of integrity. When Origen became aware that certain individuals were operating outside of the organization's strict compliance requirements regarding the manner in which laboratory services are marketed, we took immediate action, including terminating individuals and relationships with those that acted in violation of the laboratory's compliance policies. We are also voluntarily refunding monies resulting from these activities. In no case did Origen or Cockerell profit from these activities as suggested by the CBS story.

We will vigorously defend ourselves against allegations of wrongdoing – and we remain steadfast in our commitment to our patients, our staff, and our community at large to continue providing the highest quality healthcare possible.

CLINICIANS    PATIENTS    ABOUT US    NEWS & EVENTS    CONTACT US

800-309-0000

© 2016 Cockerell Dermatopathology
All rights reserved.

Website Design &
Development By:

# EXHIBIT 6

## Clarification of Facts in CBS Story

Posted on *July 11, 2016*

# Our Continued Commitment to Patients

CBS aired a story on June 8th, 2016 that included many inaccuracies about Cockerell Dermatopathology and its owner, Clay J. Cockerell, M.D., We are appalled that we were implicated in the alleged activities that took advantage of veterans and their loved ones. We want to assure you that we were not involved in those activities in any way.

We take pride in operating with the utmost integrity and honesty. Our reputation and involvement in our community—including our support of veterans—is how we built and continue to grow our business.

We appreciate the many partners, physicians and patients who have reached out to support us as we work to correct the misinformation aired by CBS. We remain steadfast in our commitment to our patients, our staff, and our community at large to continue providing the highest quality healthcare possible.

### Facts Regarding the Issue

Cockerell Dermatology's core business is dermatopathology which refers to evaluation of skin biopsy specimens. Dr. Cockerell has a relationship with Origen Laboratories that performs cutting-edge molecular, genomics and toxicology work. Origen is operated by ProGen, a third-party lab manager.

Months prior to the airing of the CBS story, ProGen became aware of individuals operating outside of the company's compliance policies and requirements. At that point, immediate action was taken including terminating all relationships with those individuals. In addition, ProGen voluntarily refunded monies resulting from these activities. From our understanding, ProGen acted swiftly and appropriately to address the wrongdoing.

We remain committed to continue to provide care to our referring physicians, our patients and our community as we deal with this unnecessary and unfortunate distraction. We thank you and the multitude of well-wishers who have reached out to us for your continued understanding and support. We look forward to putting this issue behind us and moving forward on our vision to provide the best diagnostic services to the greatest number of individuals who need them anywhere in the world.

Clay J. Cockerell, M.D.

**Share this:**

Tweet    Share 0    Share

This entry was posted in *News & Updates*. Bookmark the *permalink*.

← Teledermatology Company Adds Dr. Clay Cockerell to Advisory Board

Cockerell Dermpath Welcomes Back Dr.
Lydia Essary →

Search …

# Tweets by @CockerellDP

Cockerell Dermpath Retweeted



**Mariantonieta Tirado**
@tonitatirado

Folliculosebaceous cystic hamartoma #dermpath @CockerellDP @Juany713GV @GBRainwater @Dr_Albahrani



26 Jun



**Cockerell Dermpath**
@CockerellDP

Financial Pressures Facing Physicians Today dermpath.com/blog/financial… via @CockerellDP

Contact Us                    800 309 0000

2110 Research Row, Suite
100 Dallas, Texas 75235

f   🐦   in   ▶

© 2017 Cockerell Dermatopathology. All rights reserved.

# EXHIBIT 7

About Dark Daily        Contact Us        Search this website ...

Stay on top of the lab industry's most important events in just minutes!

Join Dark Daily's FREE ebriefing service!

Delivered directly to your desktop, tablet, or phone 3 times each week!

SIGN UP NOW

**Home**        **Webinars**        **White Papers**        **Lab Resources**        **Special Reports**

**Events**        **E-Briefings**

# Texas Dermatopathology Laboratory Under Fire for Genetic Testing Scheme Targeting Soldiers Near Fort Hood

August 24, 2016 By **jude** — **6 Comments**

*CBS News investigation alleges Cockerell Dermatopathology used service members to bill military health insurance system for millions of dollars of unnecessary screening tests*

Following its investigation, *CBS News* reported allegations that a Texas dermatopathology laboratory has bilked the military healthcare system out of millions of dollars by enticing service

members to sign up for unnecessary genetic and drug screening tests in exchange for $50 gift cards.

This latest incident adds to the growing number of investigations and health insurer lawsuits in recent years alleging fraudulent business practices within the clinical laboratory industry. Although only a handful of companies have been prosecuted by the federal government for fraud and abuse, *The Dark Report* last year noted that the hundreds of millions of dollars involved in these cases represent just a portion of the fraudulent clinical laboratory test claims that federal officials believe have been submitted in recent years by a much larger number of lab companies performing toxicology, pain management, and cardiology tests.

**Clinical Laboratory Allegedly Committed Insurance Fraud According to CBS News**

In its June 8, 2016, broadcast, *CBS News* exposed this latest alleged insurance scam involving Cockerell Dermatopathology Laboratory in Dallas. CBS News claims soldiers and their family members were drawn to makeshift clinics near Fort Hood Army base in Texas by a marketing campaign that offered a $50 Walmart gift card in exchange for providing DNA, a urine sample, and a copy of their military identification card. CBS said screening tests were then conducted and billed to Tricare, the health insurance program for military members, retirees, and their family members.

Linda Bozeman, wife of a service member, stated in the *CBS News* report that she visited a Fort Hood area clinic several times last year to earn extra money during the Christmas holiday season.

"They said they had this clinical research going and that they paid you by Walmart cards, so you'd give your urine," said Bozeman, whose photocopied ID card was found by *CBS News* in a shed filled with discarded DNA specimens, medical information, Social Security numbers, and other paperwork.

*CBS News* reported that Cockerell Dermatopathology used Bozeman's samples to bill Tricare 418 separate times for unneeded screenings for dozens of drugs such as PCP, cocaine, and methadone at a cost of nearly $7,000.

**Accused Lab Received Millions in Payments from Tricare**

According to *CBS News*, Cockerell Dermatopathology received more than $5 million in Tricare payments last year for allegedly unnecessary lab tests performed by Origen Laboratories in Dallas. The lab conducts molecular, genomics, and toxicology testing for Cockerell Dermatopathology, and also is owned by Clay Cockerell, MD, who is past President of the American Academy of

Dermatology. Origen Laboratories is managed by ProGen Lab Systems, an independent laboratory management organization.



**Retired 2-star General Richard Thomas (left), former head of Tricare, speaks with Jim Axelrod (right) of CBS News, about the investigation into Cockerell Dermatopathology of Dallas. The investigation was sparked by a CBS News story that alleged the clinical laboratory was part of a scheme to entice service members near Fort Hood Texas to provide DNA and urine samples that were used to bill the military health insurance system for millions of dollars of unnecessary genetic and drug screening tests. (Photo copyright:** *CBS News.***)**

During a briefing with reporters that took place the day after the *CBS News* report aired, Pentagon Press Secretary Peter Cook did not confirm a Pentagon investigation was under way to determine who made money at Tricare's expense, but noted, "Reports like this are obviously of concern to us and something we want to address."

**Cockerell Lab Responds to Allegations of Wrongdoing**

An estimated 2,000 soldiers may have been duped, *CBS News* stated in its report.

In response to the *CBS* broadcast, Cockerell Dermatopathology posted a statement on its website in which the lab stated it would be refunding money received from the tests in question, which was reported by Military.com. The clinical laboratory company did not provide details on the amount being refunded or indicate who would receive reimbursements. Cockerell Dermatopathology stated that the lab would "vigorously defend [itself] against allegations of wrongdoing."

"When Origen became aware that certain individuals were operating outside of the organization's strict compliance requirements regarding the manner in which laboratory services are marketed, we took immediate action, including terminating individuals and relationships with those that acted in violation of the laboratory's compliance policies," Cockerell Dermatopathology wrote in that statement. "We are also voluntarily refunding monies resulting from these activities. In no case did Origen or Cockerell profit from these activities as suggested by the *CBS* story."

The original statement is no longer available to be read on the Cockerell Dermatopathology website. However, in a "Clarification of Facts," statement posted on July 11, Cockerell admitted to having a "relationship" with Origen Laboratories, which is managed by ProGen. He also claims that "months prior to the airing of the *CBS* story" ProGen learned of "individuals operating outside of the company's compliance policies and requirements" and immediately terminated those individuals.

In July, following the *CBS* broadcast, Baylor University Medical Center announced that Alan Menter, MD, would remain as the university's Chairman of Dermatology indefinitely. According to *Dallas/Fort Worth Healthcare Daily*, Clay Cockerell had been scheduled to take over Menter's post on July 1. In a statement, Baylor praised Cockerell, stating, "Dr. Clay Cockerell is a well-regarded dermatologist who has an excellent clinical reputation. We were previously in discussions with Dr. Cockerell about a leadership position at Baylor University Medical Center. However, both parties have formally paused the talks."

The article also reported that, in an e-mail, Cockerell stated, "While I work to correct the misinformation in the story, we thought it best to delay my appointment temporarily and mutually agreed to a short term pause." Cockerell also wrote, "I do not own a lab in Killeen. The lab that is managed by ProGen performed tests on specimens that were sent to us that were induced by dishonest individuals. We learned about it over nine months ago. ProGen terminated relationships with all individuals involved, notified the payer, and began voluntarily returning all monies garnered by the tests associated with the scheme." The amounts of the refunds have not been disclosed, however, CBS News did confirm in its report that an investigation by the federal government has begun.

Tricare is managed by the Defense Health Agency and is divided into three regions in the United States and multiple regions overseas, with each region served by a health insurance contractor. The Tricare South region, which includes Texas, is administered by Humana Military. A Humana media relations manager did not respond to *Dark Daily*'s request for a response to the *CBS News* report.

Over the past year, *Dark Daily* and its sister publication, *The Dark Report* have been contacted by numerous individuals claiming knowledge of businessmen, often located in Texas, who are organizing clinical enterprises designed to remunerate physicians for clinical laboratory test referrals in ways that would be recognized by experienced medical laboratory professionals as illegal inducements and kickbacks under federal law.

In several cases, these scammers have approached established clinical labs, such as hospital labs, to ask for an agreement wherein the established labs would perform testing on specimens referred by the clinical enterprises being organized by these individuals. Where such agreements have been negotiated, the scammers then use the credibility of their "reference lab" to persuade physicians to send patient lab test samples to their shell companies. Anyone with knowledge of similar arrangements is encouraged to contact the editors of *The Dark Report* in confidence.

—*Andrea Downing Peck*

**Related Information:**

U.S. Military Members Duped to Help Pull Off Insurance Fraud

Feds Investigating Insurance Fraud That Duped U.S. Military Members

Department of Defense Press Briefing by Pentagon Press Secretary Peter Cook in the Pentagon Briefing Room

In Response to the CBS News Story That Aired on June 8, 2016

Report: Troops Duped in Alleged Tricare Fraud

Baylor Taps the Brakes On Replacing the Chairman of Its Dermatology Program

Lab Testing Scheme Targets Tricare

Baylor Delays Leadership Appointment for Dermatologist Linked to Scam Involving Vets

Is New Cycle of Laboratory Fraud Plaguing the Industry?

Filed Under: **Compliance, Legal, and Malpractice**, **Laboratory Management and Operations**, **Laboratory News**, **Laboratory Pathology**

Tagged With: **American Academy of Dermatology**, **CBS News**, **Clay Cockerell**, **clinical laboratory**, **Cockerell Dermatopathology**, **Dark Daily**, **dark intelligence group**, **Dark Report**, **Defense Health Agency**, **Department of Defense**, **Fort Hood**, **Humana Military**, **Linda Bozeman**, **medical laboratory scientist**, **Origen Laboratory**, **pathologist**, **pathology**, **Pentagon**, **Peter Cook**, **ProGen Lab Systems**, **Tricare**, **walmart**

# Comments

### Clay Cockerell says

August 26, 2016 at 10:10 am

Dear Colleagues,

This is Clay Cockerell, MD and the following is a synopsis of the entire issue alluded to above to the best of my knowledge. This is not a legal document and some of it is still speculative as we do not have all the facts yet.

In addition to my traditional dermpath lab, I have a business relationship with a clinical pathology lab, Origen, that operates in the building where we work and does molecular pathology, genomics and other diagnostic testing that is managed by a third party lab management company. This offered us the opportunity to diversify into molecular pathology which we had been wanting to do for some time. It is a well-run operation that is managed by a completely different organization than my dermpath lab but is in-network because of my CLIA certificate and contracts.

To the best of my knowledge, this is what happened in Killeen, Texas at more than one location. There were individuals who were hired as outside sales reps for Origen responsible for a scheme targeting military individuals, and ultimately Tricare, giving a gift card in exchange for submitting a urine and cheek swab sample for testing. There were physicians involved who either were complicit or may have had their identities stolen. The doctors' names were used to order the tests which were sent to Dallas. The lab performed the tests with no knowledge that they were ordered in a tainted fashion and billed for the services.

More than 10 months ago, when they became aware that the scheme was going on, the lab operators immediately terminated all relationships with those involved. Tricare was notified and

an arrangement was made to pay back revenue generated by the scheme. The lab operated appropriately as it has a fiduciary responsibility to perform tests on samples it receives. I found out about the situation after corrective actions were taken. I was not involved in dealing with the issue as I am not an operator of the lab.

Regarding the CBS news story, a reporter had been doing an investigation on lab testing in general as to whether the testing is always legitimate. We think that when she learned about the previous year's scheme, the decision was made to go with that story instead.

The reporter appeared in my parking lot in early April with a cameraman and microphone as I was walking to my car to leave. She asked me a series of questions with no opportunity for me to prepare for in advance. Since I hold the CLIA certificate and am therefore affiliated with the lab, I could be linked indirectly with the scheme, and unfortunately, the video they had shot in my parking lot with images of me and our building were shown prominently in the piece.

We believe the lab behaved in an appropriate and responsible fashion and I certainly did as well. Unfortunately, I have suffered major damage already such as the loss of business as well as other professional opportunities. This has been extremely stressful for my employees, my wife and my children as well.

I am outraged and appalled that my good reputation and honest laboratory operations were used in this fashion and we will do everything in our power to see to it that justice is done. I am further appalled that these individuals targeted military personnel and their families. I have been serving veterans as a dermatologist and dermatopathologist via interpreting specimens from the Dallas VA hospital for more than 25 years. I have veterans working for me in my lab operation and have trained a number of veteran medical students, residents and fellows.

We have had many well-wishes from those who know us to be honest. The focus on this issue has diminished dramatically and we hope it continues to do so. We continue to provide the best care we can to our patients and execute on our mission — to provide high-quality, cost-effective diagnostic services that reassure those who require them, anywhere in the world.

Sincerely,
Clay J. Cockerell, M.D.

**RT says**

September 21, 2016 at 2:07 pm

"We believe the lab behaved in an appropriate and responsible fashion and I certainly did as well. Unfortunately, I have suffered major damage already such as the loss of business as well as other professional opportunities. This has been extremely stressful for my employees, my wife and my children as well."

—

INTERESTING STATEMENT DR. COCKERELL….I am sorry to hear how stressful this has been for you and your family….Many of of us can empathize with the feeling since your lab balance billed many of us $40,000 plus dollars for scam tests that were done. The terror of bankruptcy and elimination of any chance our kids can go to college due to your scheme and your exploitation of patients really drives home that feeling of major damage and loss. And the loss of professional opportunities for our children is extremely stressful for my family too.

Your lab deserves justice to come down hard.

**D. Wooldridge says**
September 27, 2016 at 10:22 am

So, on my EOB, this is not you?

Health Care Professional: Cockerell Dermatopathology PA

You Pay

Your Plan Pays

Amount

$19,096.30

Bill received by Aetna on 09/26/2016

$4,153.90

A cheek swab done by my Primary Care doctor that told me it was free?

**Tyjuana shaw says**

October 5, 2016 at 12:34 am

This company also did the same thing to me in Charlotte, NC. My dr offered genetic testing. The lab work was sent to Cockerelle Labs. We have received paperwork that the amount of the testing was $30,000. They charged our insurance company $20,000.

**Mary McComish says**

December 29, 2016 at 4:29 pm

My husband was offered free genetic experimental testing to determine if his medication would actually work for him. We were told that neither we nor our insurance company, BCBS, would be billed. This was on 9/28/15. We are now getting a bill from Origen Laboratories DNA Cockerall Dermatopathology showing they billed BCBS $4,544.68 and they're now billing us $1,049.65. We are getting the run around from both the Lab and Dr. William Alec Tisdall's office.

**Shelly Nickell says**

April 17, 2017 at 10:57 am

My son is being threatened by OriGen Labs! They have been sending us bills for almost $600.00 for ,"labwork" done on a visit to the orthopedic for a knee injury in October of 2015. He had X-rays done! No swab or bloodwork done! They will not respond to either of us ! Never an answer on billing line! What can he/we do. He is a struggling college student whose credit is being threatened! We are not military. Please advise!

Thank you!!!

## Leave a Reply

Your email address will not be published. Required fields are marked *

Comment

Name *

Email *

Website

Post Comment

### LATEST E-BRIEFINGS

Drones Used to Deliver Clinical
Laboratory Specimens in
Switzerland

CMS Missed 96 Hospitals with
Suspected HAI Reporting Due to
Limited Use of Analytics, OIG
Report Reveals

Studies Show Utilization
Management Systems Help
Clinical Laboratories Remove
Physician Uncertainty Over
Availability of Diagnostic Tests
and How to Properly Interpret
Results

Expected Increase in Demand for
Remote Health Monitoring of
America's Elderly Presents
Opportunities for Clinical
Laboratories to Provide Services

Canadian Researchers Develop
Low-Cost, Lens-Free Light-Field
Microscope; Could Make
Anatomic Pathology Labs
Portable and More Affordable

Subscribe to E-Briefings

### Dark Daily Information

**Contact:** Email Chris Garcia or call 512.264.7103

**Services & Products:** Webinars | White Papers | Lab Resources | Special Reports | Events | E-Briefings

**Company Information:** About Us | Privacy Policy

**Related Sites:** The Dark Report | Executive War College | Lab Quality Confab

### Connect With Us

### Editorial Excellence Award Winner



Click here for more information

Copyright © 2017 · The Dark Intelligence Group, Inc. All rights reserved.

# EXHIBIT 8

Case 3:17-cv-01840-B   Document 1-1   Filed 07/13/17   Page 96 of 107   PageID 102

# TEXAS SECRETARY of STATE
# ROLANDO B. PABLOS

UCC | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 801750722 | **Entity Type:** | Professional Association |
| **Original Date of Filing:** | March 15, 2013 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32050454381 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | Cockerell Dermatopathology, PA |
| **Address:** | 2110 RESEARCH ROW SUITE 100 |
| | DALLAS, TX 75235 USA |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Assumed Name | Date of Filing | Expiration Date | Inactive Date | Name Status | Counties |
|---|---|---|---|---|---|
| OriGen Laboratories | January 25, 2016 | January 25, 2026 | December 16, 2016 | Abandoned | All Counties |

[ Order ]   [ Return to Search ]

---

Instructions:
  🔴 To place an order for additional information about a filing press the 'Order' button.

# EXHIBIT 9

**This Business Is Not BBB Accredited**

# Cockerell Dermatopathology

## Business Information

PO Box 678705
Dallas, TX 75267-8705

BBB File Opened: 07/07/2015

**Business Category**

- Referral - Doctor

## Reviews & Complaints

| View Customer Reviews [0] |
|:---:|

**View Customer Complaints [4]**

SORT BY: Date ▾     FILTER BY: Show All ▾

## Customer Complaints Summary

**4 complaints closed with BBB in last 3 years | 1 closed in last 12 months**

| Complaint Type | Total Closed Complaints |
|---|---|
| Billing / Collection Issues | 4 |
| Advertising / Sales Issues | 0 |
| Problems with Product / Service | 0 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **4** |

**The business failed to respond to the dispute. (4 complaints)**

09/05/2016     Billing / Collection Issues

**Complaint**

double paid the bill on May 16,2016 Have called company several times say they are sending a check or its in the works Both checks were cash 6/20/'16
Company billed me twice sent check X-X-XXXX second billing thought the check was lost. sent second check X-XX-XXXX Both cashed on 6/20 and 6/21/2016. (Show More of Complaint)

**Desired Settlement**

Billed me twice thought check was lost so paid a
again. Both checks were cashed on6/20 and 6/21/2016
Have called several times told its in the works or they will be sending me a check Last call was 07-28-'16 I would just like my money back taking 2 months for it to be return is taking so long is (Show More of Desired Settlement)

| 06/27/2016 | Billing / Collection Issues |
|---|---|

**Complaint**

I had a wart removed from my foot on 3/29/2016. I was not informed that they would send a sample to the Pathologist and charge me for it.
I did not ask for, nor was I informed, that a sample of the tissue was being sent to a Pathologist's Lab and that I would be billed for the lab work. This was never (Show More of Complaint)

**Desired Settlement**

Please remove the Pathologist part of my invoice for the amount of ($80.42).

| 01/15/2016 | Billing / Collection Issues |
|---|---|

**Complaint**

Cockerell Dermatopathology sent a bill in the amount of $4,283.24. I've never heard of this company and never had a procedure on the date or procedure
Cockerell Dermatopathology sent a bill in the amount of $4,283.24. I've never heard of this company and never had a procedure on the date or procedure

**Desired Settlement**

Cockerell Dermatopathology sent a bill in the amount of $4,283.24. I've never heard of this company and never had a procedure on the date or procedure

## BBB Rating Scorecard

### THIS BUSINESS IS NOT BBB ACCREDITED

**Cockerell Dermatopathology**

# F

**BBB Rating System Overview (https://www.bbb.org/council/overview-of-bbb-grade/)**

### Customer Review Rating:

The BBB Customer Review Rating represents the customer's opinion of the business. The Customer Review Rating percentages are based on the total number of positive, neutral, and negative reviews posted.

There are **NO** reviews for this business.
Be the first to leave a review!

**[4] Total Customer Complaints (https://www.bbb.org/dallas/business-reviews/referral-doctor/cockerell-dermatopathology-in-dallas-tx-90557583/reviews-and-complaints?section=complaints)**

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. Information in this BBB Business Profile is believed reliable, but not guaranteed as to accuracy.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.

© 2017 BBB Serving North Central Texas All Rights Reserved.

# EXHIBIT 10



**This Business Is Not BBB Accredited**

# Origen Laboratories

## Business Information

(844) 667-4436

2110 Research Row, Suite 100G
Dallas, TX 75235

BBB File Opened: 12/21/2016

**Business Category**

- Laboratories - Medical

**Licensing, Bonding or Registration**

This business is in an industry that may require professional licensing, bonding or registration. BBB encourages you to check with the appropriate agency to be certain any requirements are currently being met.

## Reviews & Complaints

**View Customer Reviews [0]**

**View Customer Complaints [1]**

SORT BY: Date ▼    FILTER BY: Show All ▼

## Customer Complaints Summary

**1 complaint closed with BBB in last 3 years | 1 closed in last 12 months**

| Complaint Type | Total Closed Complaints |
|---|---|
| Problems with Product / Service | 1 |
| Advertising / Sales Issues | 0 |
| Billing / Collection Issues | 0 |
| Delivery Issues | 0 |
| Guarantee / Warranty Issues | 0 |
| **Total Closed Complaints** | **1** |

**The business failed to respond to the dispute. (1 complaint)**

01/18/2017     Problems with Product / Service

**Complaint**

ORIGEN LABORATORIES OWES SOUTHERN LAB SPECIALTIES LLC $3,945.00 FOR SERVICES RENDERED
FROM 7/5/16 TO 8/23/26. IT HAS BEEN 5 MONTHS WITH NO ANSWER FROM ORIGEN LABORATORIES.

## BBB Rating Scorecard

### THIS BUSINESS IS NOT BBB ACCREDITED

**Origen Laboratories**

# D+

**BBB Rating System Overview (https://www.bbb.org/council/overview-of-bbb-grade/)**

### Customer Review Rating:

The BBB Customer Review Rating represents the customer's opinion of the business. The Customer Review Rating percentages are based on the total
number of positive, neutral, and negative reviews posted.

There are **NO** reviews for this business.
Be the first to leave a review!

**[1] Total Customer Complaints (https://www.bbb.org/dallas/business-reviews/laboratories-medical/origen-laboratories-in-dallas-tx-
90799811/reviews-and-complaints?section=complaints)**

BBB Business Profiles may not be reproduced for sales or promotional purposes.

BBB Business Profiles are provided solely to assist you in exercising your own best judgment. Information in this BBB Business Profile is believed reliable, but not guaranteed as to accuracy.

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

BBB Business Profiles generally cover a three-year reporting period. BBB Business Profiles are subject to change at any time. If you choose to do business with this business, please let the business know that you contacted BBB for a BBB Business Profile.



© 2017 BBB Serving North Central Texas All Rights Reserved.

# EXHIBIT 11

CAUSE NO. DC-17-06799

| | | |
|---|---|---|
| CLAY COCKERELL and | § | IN THE DISTRICT COURT OF |
| COCKERELL DERMATOPATHOLOGY, | § | |
| P.A., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CBS NEWS INC; JIM AXELROD; and | § | |
| EMILY RAND, | § | |
| | § | |
| **Defendants.** | § | 193RD JUDICIAL DISTRICT |

## VERIFICATION OF NICHOLAS E. POSER

STATE OF _New York_       §
                          §
COUNTY OF _New York_      §

Before me, the undersigned notary, on this day personally appeared Nicholas E. Poser, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Nicholas E. Poser. I am over twenty-one years of age and of sound mind and capable of making this verification. I am the Senior Vice-President and Associate General Counsel of CBS Broadcasting, Inc. I have read the Verified Pleas contained in Defendants' Answer, Special Exceptions, Verified Pleas and Affirmative Defenses to Plaintiff's Original Petition.

There is a defect of parties in Plaintiffs' Original Petition because Plaintiffs have failed to properly identify the correct CBS entity. CBS News Inc., named as a defendant in the above-styled lawsuit, is not the correct name of the legal entity that broadcast and published the reports at issue. The correct name of that entity is CBS Broadcasting Inc., which owns and operates the CBS News Division of which "The CBS Evening News" is a part. To the extent Plaintiffs seek to bring claims against "The CBS Evening News," they have sued the wrong entity.

1

Furthermore, I affirm that at no time did Defendants receive a written request for a correction, clarification, or retraction of the Reports prior to the filing of this lawsuit."

_____
Affiant

Sworn to and subscribed before me by _Nicholas E. Poser_____ on July _7_, 2017.

_____
Notary Public

My commission expires: _7-5-2018_____

IRENE A. GAUDREAU
Notary Public, State of New York
No. 4936640
Qualified in Nassau County
Commission Expires July 5, 2018

2